**CLARK HILL LLP**
Myriah Jaworski (SBN 336898)
mjaworski@clarkhill.com
Ali Bloom (SBN 347446)
abloom@clarkhill.com
One America Plaza
600 West Broadway, Suite 500
San Diego, CA 92101
Telephone:  (619) 557-0404
Facsimile:   (619) 557-0460

Chirag H. Patel (*pro hac vice* forthcoming)
cpatel@clarkhill.com
130 E. Randolph
Suite 3900
Chicago, IL 60601
Telephone:  (312) 985-5900
Facsimile:   (312) 985-5999

*Attorneys for Defendant National Notary Association*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA TURNER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                                Plaintiff,<br><br>        v.<br><br>NATIONAL NOTARY ASSOCIATION,<br><br>                                Defendant. | Case No. 2:25-CV-00334-FMO-PD<br><br>**DEFENDANT NATIONAL NOTARY ASSOCIATION'S RULE 12 MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; [PROPOSED] ORDER**<br><br>Judge:     Fernando M. Olguin<br><br>Hearing: April 10, 2025<br>Time: 10:00 AM<br>Ctrm: 6D |

CASE NO.: 2:25-CV-00334-FMO-

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 10, 2025 at 10:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Ferando M. Olguin, in Courtroom 6D of the above-entitled Court, located at First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, Defendant National Notary Association ("NNA" or "Defendant"), by and through its attorneys of record, will and hereby do move for an order dismissing the Complaint, ECF No. 1 ("Complaint"), with prejudice pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiff lacks Article III standing for her Video Protection Privacy Act, 18 U.S.C. § 2710 ("VPPA") claim because she cannot plead or prove that Defendant disclosed her "private" video viewing information in a manner that would establish a cognizable injury-in-fact. Plaintiff's VPPA claim must also be dismissed for failure to state a claim under Rule 12(b)(6) because Plaintiff fails to plead the essential elements of the claim. Additionally, the VPPA as interpreted by Plaintiff is unconstitutionally vague under the Due Process Clause and violates the First Amendment.

This motion is based upon the following memorandum of points and authorities, the declaration of Robert Clarke ("Decl."), the proposed order, the complete files and records in this action, the argument of counsel, and any other matters the Court may consider.

1

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3</u>

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 6, 2025.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................ 4

    A.  The National Notary Association ........................................................ 4

    B.  Plaintiff Teresa Turner ........................................................................ 5

III.  ARGUMENT ................................................................................................... 6

    A.  PLAINTIFF LACKS ARTICLE III STANDING. ............................... 6

        1.  Rule 12(b)(1) Standard for Factual Challenges. ....................... 6

        2.  Turner Does Not Allege *Any Harm.* ....................................... 7

        3.  Turner Cannot Claim a "Disclosure" of "Private" Information that She Herself Disclosed to Meta. ...................... 9

        4.  Turner Has No Privacy Interest in Information She Has Publicized to the General Public. ...................................... 11

        5.  The NNA Did Not Disclose Turner's Certification Course to Meta. ............................................................................ 12

    B.  PLAINTIFF FAILS TO STATE A VPPA CLAIM. ......................... 13

        1.  Rule 12(b)(6) Standard of Review ............................................ 13

        2.  This Court Should Take Judicial Notice of Plaintiff's LinkedIn and Facebook pages, and the NNA's Privacy Policy. ............................................................................ 14

        3.  The NNA is not a "Video Tape Service Provider." ................. 15

            a.  The NNA is Not Primarily "Engaged the Business" of Renting, Selling or Delivering Covered Audio Visual Materials. ................................... 16

            b.  Turner Does Not Adequately Allege that the NNA Sells Covered "Audio-Visual Materials." ............ 17

        4.  Turner Also Fails to Adequately Allege "Disclosure" Under the VPPA. ..................................................................... 18

            a.  First, the Alleged Disclosure Did Not Occur. ................ 18

            b.  Second, Turner Cannot Demonstrate a

Disclosure of PII Because the Information Allegedly Disclosed is Public. ........................................ 18

c.    Third, Turner Does Not Allege Facts Sufficient to Demonstrate that a "Disclosure" of PII Occurred. ........................................................ 19

d.    Fourth, an FID is not PII. ................................................ 20

e.    Fifth, Turner Does Not Adequately Allege a "Knowing" Disclosure by the NNA. .............................. 22

C.    THE VPPA, AS INTERPRETED AND APPLIED BY PLAINTIFF, IS UNCONSTITUTIONAL. ........................................ 22

1.    As Applied, the VPPA Violates the Fifth Amendment. ........... 22

2.    As Applied, the VPPA Violates the First Amendment. ........... 23

a.    No Substantial Interest ................................................ 24

b.    Not Appropriately Tailored ........................................... 24

NOTICE OF MOTION AND RULE 12 MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022) ................................................................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 13

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) ............................................................................................. 24

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011) ............................................................................................. 24

*Byars v. Hot Topic, Inc.*,
No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *5 (C.D.
Cal. Feb. 14, 2023) ............................................................................................. 3, 9

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) ................................................................ 16

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
447 U.S. 557 (1980) ............................................................................................. 23

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ............................................................................... 7

*Connally v. General Constr. Co.*,
269 U.S. 385 (1926) ............................................................................................. 22

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ................................................................... 12

*D'Angelo v. FCA US*,
LLC, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) ..................................................... 15

*Daghaly v. Bloomingdales.com, LLC*,
   No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024, R. 36-3
   Opp.) ........................................................................................................... 8

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ..................................................................... 15

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ...................................................................... 7

*Davidson v. Hewlett-Packard Co.*,
   5:16-CV-01928-EJD, 2021 WL 4222130 (N.D. Cal. Sept. 16,
   2021), *aff'd*, 21-16707, 2022 WL 17352186 (9th Cir. Dec. 1, 2022) ............... 12

*Edwards v. Learfield Commc'ns, LLC*,
   697 F. Supp. 3d 1297 (N.D. Fl. 2023) .................................................... 20, 21

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ............................................................. *passim*

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) .................................................................. 21

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ............................................................................ 22, 23

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ...................................................................... 19

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ..................................................................................... 7

*Fraley v. Facebook, Inc.*,
   830 F.Supp. 2d 785 (N.D. Cal. 2011) ....................................................... 2, 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
   Inc., 528 U.S. 167 (2000) ............................................................................ 7

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................................ 15

*Heldt v. Guardian Life Ins. Co. of Am.*,
   16-CV-885-BAS-NLS, 2019 WL 651503 (S.D. Cal. Feb. 15, 2019) ............... 12

NOTICE OF MOTION AND RULE 12 MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Hoge v. VSS-Southern Theaters LLC*, 1:23-cv-346, 2024 WL
    4547208 (M.D.N.C. Sept. 10, 2024) .................................................... 10

*Holley v. Gilead Scis., Inc.*,
    410 F. Supp. 3d 1096 (N.D. Cal. 2019) ............................................. 6

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal Aug. 10, 2012)................. 17

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ................ 20

*Lindora, LLC v. Limitless Longevity LLC*,
    No. 15-CV-2847-JAH (KSC), 2016 WL 6804443 (S.D. Cal.
    Sept. 29, 2016) ................................................................................ 15

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ............................................................. 7

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ................................................................ 24

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ............................................................ 9

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ....................................................... *passim*

*Opperman v. Path, Inc.*,
    87 F.Supp.3d 1018 (N.D. Cal. 2014)......................................... 13, 14

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    No. 16-CV-01393-JST, 2017 WL 2672113 (N.D. Cal. Jan. 19,
    2017).............................................................................................. 14

*Osheske v. Silver Cinemas Acquisition Co.*,
    700 F. Supp. 3d 921 (C.D. Cal. 2023)................................... 9, 10, 19

*Paris Adult Theatre I v. Slaton*,
    413 U.S. 49 (1973) ........................................................................ 10

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ............................................ 15

NOTICE OF MOTION AND RULE 12 MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Posadas v. Goodyear Tire & Rubber Co.*,
  No. 23-CV-0402-L-DDL, 2024 WL 5114133 (S.D. Cal. Dec. 13,
  2024) ............................................................................................................... 8

*Rinderer v. Delaware Cnty. Child. & Youth Servs.*,
  703 F. Supp. 358 (E.D. Pa. 1987) ................................................................... 10

*Robinson v. Disney Online*,
  152 F. Supp. 3d 176 (S.D.N.Y. 2015) ........................................................ 18, 20

*Rodriguez v. JD Boden Servs., Inc.*,
  2024 WL 559228 (S.D. Cal. Feb. 12, 2024) ............................................... 16, 17

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .......................................................................... 6

*Smith v. Maryland*,
  442 U.S. 735 (1979) ......................................................................................... 11

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552, 577 (2011) ............................................................................ 23, 24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................... 7

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
  445 F. Supp. 3d 139 (N.D. Cal. 2020) ............................................................. 14

*TransUnion LLC v. Ramierz*,
  559 U.S. 413 (2021) ............................................................................... 2, 7, 8, 9

*U.S. West, Inc. v. FCC*,
  182 F.3d 1224 (10th Cir. 1999) ....................................................................... 23

*United States v. Meregildo*,
  883 F. Supp. 2d 523 (S.D.N.Y. 2012) .............................................................. 12

*Valenzuela v. Keurig Green Mountain, Inc.*,
  2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .................................................... 8

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................ 16

NOTICE OF MOTION AND RULE 12 MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Walsh v. California Cinema Invs. LLC,*
    2024 WL 3593569 (C.D. Cal. July 29, 2024) ................................................. 2, 16

*Winsor v. Sequoia Benefits & Ins. Servs., LLC,*
    62 F.4th 517 (9th Cir. 2023) ................................................................................. 7

*Zella v. E.W. Scripps Co.,*
    529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) .................................................. 15

**Constitutions**

U.S. Const. Amend. I ...................................................................................................... 23

**Statutes**

18 U.S.C. § 2710 ...................................................................................................... 1, 24

18 U.S.C. § 2710(a)(3) ............................................................................................... 19

18 U.S.C. § 2710(a)(4) ........................................................................................... 2, 16

18 U.S.C. § 2710(a)-(b) ............................................................................................. 23

18 U.S.C. § 2710(b)(1) ......................................................................................... 15, 18

18 U.S.C. § 2710(c) .................................................................................................... 23

38 U.S.C. § 7331 ........................................................................................................ 24

**Court Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 9, 13, 14, 22

Fed. R. Civ. P. 12(h)(3) ............................................................................................... 6

Fed. R. Evid. 201(c) ................................................................................................... 14

**Other Authorities**

https://www.merriam-webster.com/dictionary/laser%20disc ............................... 18

Restatement (Second) of Torts § 652D, cmt. b (1977) ..................................... 11, 12

S. Rep. No. 100–599 (1988), reprinted in 1988 U.S.C.C.A.N. 4342 ................. 9, 17

## I.    INTRODUCTION

In 1988, Congress enacted the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA" or "Act") to "codif[y] a **context-specific** extension of the *substantive* right to privacy." *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983 (9th Cir. 2017) (italics in original; bold added). "Congress's purpose in passing the [VPPA] ***was quite narrow***: to prevent disclosures of information that would . . . permit an ordinary recipient to identify a particular person's video-watching habits." *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d 262, 284 (3d Cir. 2016) (emphasis added).

Plaintiff Teresa Turner("Turner" or "Plaintiff")'s Complaint[1] is the latest in a recent flood of litigation seeking to transform this pre-internet statute, narrowly designed to prevent video stores from disclosing their customers' private video viewing information, into a broad-ranging internet privacy law. Turner claims that defendant, National Notary Association ("NNA" or "Defendant") – a notary resources and credentialing organization that is not in the business of buying or renting video tapes – violated the VPPA by allegedly installing third-party code (the "Pixel") on www.nationalnotary.org ("Website") which caused the disclosure of her "private video information" to Meta. Specifically, Turner – ***who publicly promotes herself as a notary and publishes her course completion certificate from the NNA*** – confoundingly claims that the very same NNA certification course is somehow her private video information. As explained below, Turner's VPPA claim fails for lack of Article III standing and on the merits:

***First***, Turner fails to allege any "concrete" or "particularized" harm to meet her burden of showing an Article III "injury in fact" required to sustain this action in federal court. Turner makes no factual allegations of harm – physical, economic or otherwise – *whatsoever*. Rather, this putative class action Complaint gambles its entire existence on generic allegations of a bare (and defectively pled) technical

---

[1] Plaintiff's Complaint, ECF No. 1, is cited herein as "Complaint" or "Compl."

VPPA violation. This is inadequate for injury-in-fact purposes under *TransUnion* and its progeny. *TransUnion LLC v. Ramirez*, 559 U.S. 413, 425 (2021).

Further, the VPPA enshrines a very narrow right of privacy – against the unauthorized disclosure of an individual's *private* video viewing information. Here, Turner cannot demonstrate a particularized privacy injury for three distinct reasons:[2]

1. The **very course** from the NNA that she claims is "private video information" (which itself is a tortured interpretation of the VPPA) was ***never* disclosed by the NNA to Meta;**

2. The NNA's alleged disclosure to Meta could not have been "*private* video information,*"* **because Turner herself voluntarily disclosed that information (*i.e.*, her NNA Certificate of course completion) to Meta** by posting it to her Facebook profile.

3. Turner's completion of the NNA course also cannot be private information because **Turner herself proudly publishes and promotes her NNA course completion certificate on various public forums** (including LinkedIn and Facebook).

Turner has no feasible Article III injury-in-fact and the Complaint must be dismissed. *See* § III(A), *infra.*

**Second,** the Court should dismiss the Complaint because the NNA is not a "video tape service provider" 18 U.S.C. § 2710(a)(4) ("VTSP"), because the delivery of video content is not the "focus" or "defining feature" of the NNA's business. *See Walsh v. California Cinema Invs. LLC*, 2024 WL 3593569, at *5 (C.D. Cal. July 29, 2024). The educational programming at issue is delivered via an independent third-party platform, and the online educational programs offered for purchase on the Website comprise only a small sliver (no more than 1-10%) of the NNA's overall revenue. *See* § II(A), *infra.*

**Third,** even if Turner can demonstrate Article III standing (she cannot) and

---

[2] As set forth in § III(A)(1), *infra,*"[i]n resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment . . . ." *Fraley v. Facebook, Inc.*, 830 F.Supp. 2d 785, 793 (N.D. Cal. 2011).

establish that the NNA is a VTSP (it is not), the conclusory allegations included in the Complaint fail to state a claim. Only six paragraphs in the entire 86-paragraph Complaint concern Teresa Turner, and those paragraphs are threadbare and generic. Compl. ¶¶ 3-9. Turner fails to provide any facts regarding the *video* that she allegedly obtained or the *private data* that was allegedly transmitted and disclosed. The remaining 80 paragraphs do not remedy this pleading defect, as the allegations are nearly identical to those made in other VPPA complaints filed by the same counsel against different defendants.[3] This form of generic pleading is exactly what this Court warned of in *Byars v. Hot Topic, Inc*., No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *5 (C.D. Cal. Feb. 14, 2023):

> *Twombly-Iqbal* pleading standards [can] be distilled to a single proposition: if a litigant pleads at such a high level of *generality that it is possible to copy and paste a complaint word-for-word against a new defendant* . . . , *then almost by definition he is pleading without the factual specificity necessary to state a claim for relief*.

(emphasis added).

Unsurprisingly, these copy-and-pasted boilerplate allegations concerning the Meta Pixel are also demonstrably incorrect. The Court can take judicial notice of the fact that the NNA Website does not host (or "deliver") educational or training videos *at all*. Decl. ¶ 25.[4] Those videos are hosted by an independent third-party platform, "CrowdWisdom" (the "Platform") on a separate website that does not deploy the Pixel. *Id*. And the Pixel as deployed on the NNA Website was configured to not collect or disclose anything that could remotely constitute "private video information," nor did it. Decl. ¶¶ 19-21. In addition to being inadequately pled, no VPPA-violative disclosure ever actually took place. *See* § III(A)(3), *infra*.

---

[3] *See* **Index 1**, *infra* at p. 27 (listing 20 other cases filed by the law firm Hedin LLP with substantially similar complaints).

[4] The NNA's Memorandum of Points and Authorities is supported by the declaration of the NNA's Chief Financial Officer, Robert Clark. The declaration is attached as **Exhibit A**, and cited herein as "Decl."

*Fourth and finally*, Turner's expansive theory, if accepted, would extend the VPPA far beyond its intended scope and expose every website that hosts video clips (a hefty percentage in today's modern world) to unforeseen liability and enormous damages claims. Interpreting the VPPA in this manner would violate Due Process and the First Amendment. *See* § III(C)(1)-(2), *infra*.

As the Third Circuit cautioned in *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 290, "The classic example [of a VPPA violation] will always be a video clerk leaking an individual customer's video rental history. Every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." Turner's attempt to assert a privacy violation based on the NNA's alleged disclosure of information that she herself publishes all over the internet is a significant departure from both the text of the VPPA statute and its intended purpose. The Complaint must be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The National Notary Association

The NNA is "the largest and oldest organization in the United States serving notaries and training persons to be notaries through certifications, training, seminars, conferences, and printed and online educational materials." Compl. ¶ 14. The NNA is the ultimate source for every notarial need, including: notary insurance and bonding products, the provision of notary supplies (stamps, journals, thumb printers, handbooks etc.), notary public advocacy and networking, and notary training and education (predominantly through in-person seminars and conferences). Decl. ¶¶ 6-11 . As part of its larger training and education programming, the NNA offers online education courses for purchase. Decl. ¶ 10(a). But those online education courses constitute only a small sliver of NNA's total sales, between 1-10%. Decl. ¶¶ 15-16.

To purchase an online education course, a visitor must add the course to their shopping cart and go through a check-out process. Decl. ¶ 18. The shopping cart and checkout pages use generic URLs that are not descriptive of the items in the

shopping cart (*e.g.*, nationalnotary.org/shoppingcart). Decl. ¶ 20. Meta does not receive the names of online education and training programs that are in a visitor's shopping cart or that are purchased by the visitor. Decl. ¶ 21. In other words, the Meta Pixel is not configured to collect information related to a visitor's purchase of an educational program from the Website.

NNA also does not host or "deliver" the online education courses on its Website. Decl. ¶ 24. Rather, those courses are provided by an independent third-party called "CrowdWisdom." Decl. ¶ 25. After purchase, the user is provided with a hyperlink that takes them to the CrowdWisdom platform, at www.crowdwisdom.com. Decl. ¶¶ 26-27. Before entering the Platform, a user must affirmatively agree to CrowdWisdom's Privacy Policy. Decl. ¶¶ 28-29. The CrowdWisdom Platform on which a user may view purchased course videos does not deploy the Meta Pixel. Decl. ¶ 31.

### B.    Plaintiff Teresa Turner

Turner states that she is a California resident and a "user of Meta." Compl. ¶ 8. In August 2024, Turner "purchased pre-recorded video content" from NNA's Website, by "requesting and paying for such material, providing her name, email address, and home address for the delivery of such material." Compl. ¶ 9. At some point thereafter, "Defendant completed the sale of goods to Plaintiff by shipping or delivering the prerecorded video material she purchased to the address she provided in her order." *Id*. Turner then alleges generally that her "private video information" was shared by NNA with Meta. *Id.*

The only course that Turner purchased from the NNA was its Notary Loan Signing Agent Certification course ("NNA Certification"). Decl. ¶ 16.

Turner publicly promotes her association with the NNA. Turner specifically touts the NNA Certification she received after completing the NNA's "Loan Signing Agent" course, including by posting a picture of the actual certificate, on both her LinkedIn and Facebook profiles. Decl. ¶ 34-40.

### III.     ARGUMENT

#### A.     PLAINTIFF LACKS ARTICLE III STANDING.

Turner's generic complaint fails because it does not even attempt to allege *any* actual harm or injury resulting from the alleged disclosure of her NNA Certification to Meta (let alone a violation of the content-specific, narrow privacy right the VPPA is designed to protect). *See* § III(A)(2), *infra*. But even if pleading the statutory elements of the VPPA were sufficient to plead an Article III injury, Turner, as a matter of fact, has no cognizable injury because the alleged disclosure by the NNA to Meta did not occur. *See* § III(A)(2), *infra*. Additionally, Turner has no privacy interest in the NNA Certification that she herself has published to Meta and promoted to the public on multiple internet platforms. *See* § III(A)(3)-(4), *infra*.

#### 1.     Rule 12(b)(1) Standard for Factual Challenges.

Under Rule 12(b)(1), if the court determines at any time that it lacks subject matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3). "The party asserting subject matter jurisdiction bears the burden of establishing it." *Holley v. Gilead Scis., Inc.*, 410 F. Supp. 3d 1096, 1100 (N.D. Cal. 2019). A Rule 12(b)(1) challenge to Article III standing may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court must accept all material allegations in the complaint as true and construe them in favor of the party asserting jurisdiction. *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 793 (N.D. Cal. 2011).

But where, as here, the attack is *factual*, "the court need not presume truthfulness of the plaintiffs' allegations." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual dispute as to the existence of subject matter jurisdiction, **a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment** . . . Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction." *Fraley*, 830 F. Supp.

at 793-794 (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"); *see also Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). A district court may permit discovery to determine if it has subject matter jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc*., 557 F.2d 1280, 1285 (9th Cir. 1977).[5]

### 2.    Turner Does Not Allege *Any Harm.*

To meet the requirements of Article III standing, a plaintiff must show an "injury-in-fact" that "is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*., Inc., 528 U.S. 167, 180-81 (2000). A "general legal, moral, ideological, or policy objection" is not an injury-in-fact. *Food & Drug Admin. v. All. for Hippocratic Med*., 602 U.S. 367, 368 (2024). Nor is a "bare procedural violation" of a statute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Even in a putative class action, Turner must "allege and show that [she] personally [has] been injured." *Winsor v. Sequoia Benefits & Ins. Servs., LLC,* 62 F.4th 517, 523 (9th Cir. 2023) (internal quotations and citations omitted). Merely alleging a statutory violation is insufficient to establish Article III standing. *Spokeo,* 578 U.S. at 341. The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion,* 594 U.S. at 426 (*quoting Spokeo,* 578 U.S. at 341). Rather, "[f]or standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of . . . law,

---

[5] The NNA's request for judicial notice provides a basis to allow this Court to consider public facts and documents including Turner's Facebook Page in a Rule 12 motion. *See* § (III)(B)(2), *infra.*

and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of . . . law." *Id. at* 426-27.

Thus, asserting a VPPA claim does not relieve Turner of her obligation to "allege and show" she suffered a concrete harm from the alleged statutory violation. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc*., 2023 WL 6609351, *1 (N.D. Cal. Oct. 10, 2023) ("While [p]laintiff alleges Defendant violated [the California Invasion of Privacy Act ("CIPA")], [p]laintiff fails to allege any facts to support an inference Defendant engaged in any kind of privacy violation." (emphasis added)). Turner generically alleges that she "purchased pre-recorded video material" from NNA around August 2024, that she had a Meta account at that time, and that the NNA disclosed her Facebook ID, "detailed information revealing the titles and subject matter of the prerecorded videos," and the "URL where such videos are available for purchase." Compl. ¶¶ 9-11, 41; 58-57. The remainder of the Complaint contains even more generalized statements about the history of the VPPA and facts pertaining to how the Meta Pixel *may theoretically* be deployed (depending on the configuration employed by a user). Compl. ¶¶ 24-40; 42-57 (*see, e.g*., ¶ 47, tools a business "may use"; ¶ 52, "depending on the configuration").These "generalized and conclusory allegations that the [Pixels are] capable of capturing private data" are "insufficient to assert that [Turner] suffered a concrete injury as a result of [the NNA's] conduct." *Posadas v. Goodyear Tire & Rubber Co*., No. 23-CV-0402-L-DDL, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 13, 2024) (discussing CIPA). Turner fails this requirement in two ways:

First, Turner fails to plead Article III injury-in-fact because she does not plead a plausible VPPA claim. *See, e.g., Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, *1 (9th Cir. Dec. 17, 2024, R. 36-3 Opp.) ("Plaintiff lacks standing because her allegations are insufficient to state a claim under the [statutory] provision she invokes."). Turner does not allege facts to demonstrate that: (b) the NNA's content is "audio visual material," (c) private video information was actually

disclosed to Meta or (d) NNA qualifies as a "video tape service provider." *See* § III(B)(3)-(4), *infra* (Turner's complaint fails under Fed. R. Civ. P. 12(b)(6)).

Secondarily, even if Turner had adequately alleged the elements of a VPPA claim, Turner does not even attempt to articulate what concrete harm she suffered from the NNA's alleged disclosure to Meta. Thus, Turner fails to meet Article III's injury-in-fact requirement because she does not plead that she suffered "any harm *at all*." *TransUnion*, 594 U.S. at 440 (emphasis in original).

### 3.    Turner Cannot Claim a "Disclosure" of "Private" Information that She Herself Disclosed to Meta.

Turner also lacks an Article III injury-in-fact because she voluntarily disclosed to Meta the exact information she alleges is "private" video information (her NNA Certification course). Again, the VPPA "codifies a **context-specific** extension of the *substantive* right to privacy." *Eichenberger*, 876 F.3d at 983 (9th Cir. 2017) (italics in original, bold added). Specifically, a "privacy interest in his or her video-viewing history." *Id.* (citing *Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) (citing S. Rep. No. 100–599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342)). Thus, it is the "*disclosure* of an individual's 'personally identifiable information' and video-viewing history [that] offends the interests that the VPPA protects." *Id.* (emphasis added).

In other words, to demonstrate Article III standing for a VPPA violation, Turner must show that the NNA infringed on the narrow privacy right that the VPPA was designed to protect. *See, e.g.*, *Byars*, 2023 WL 2996686, at *3 ("[p]laintiff does not allege that she disclosed any *sensitive information* to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest." (discussing CIPA)). But, an individual does not have a substantive privacy right (*i.e.*, cannot claim that an offending disclosure has occurred) for information the individual voluntarily disclosed. *See Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921, 926-27 n. 4 (C.D. Cal. 2023) (the "VPPA

[was] intended to address private video viewing habits—not public acts like
attending a theater"); *see also* Hoge v. VSS-Southern Theaters LLC, 1:23-cv-346,
2024 WL 4547208 (M.D.N.C. Sept. 10, 2024) (finding *Osheske* persuasive and
holding that an individual who buys a ticket to a theater is not a protected
"consumer"). This District Court's decision in *Osheske* is instructive.

In *Osheske,* a patron purchased movie tickets from a movie theater's website.
*Id*. at 922. The patron alleged that the movie theater violated the VPPA by disclosing
the name of the film he intended to watch to Meta by implementing the Meta Pixel
on its Website. *Id*. In granting the movie theater's Rule 12 motion, the District Court
explained that the VPPA was intended to protect against the disclosure of *private*
video watching habits. *Id*. at 926 (citing VPPA's legislative record). That content-
specific privacy right was not implicated by "public acts like attending a theater."
*Id*. at 927 (citing *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973)). *See also*
*In re Nickelodeon Consumer Priv. Litig*., 827 F.3d at 384 ("Congress's purpose in
passing the [VPPA] was quite narrow: *to prevent disclosures* of information that
would . . . permit an ordinary recipient to identify a particular person's video-
watching habits." (emphasis added).

*Osheske* supports that the VPPA's narrow and context-specific privacy right
is not implicated (and thus the VPPA is not violated) when an individual watches a
movie in a public movie theater, because that individual would expect other movie
patrons to observe them watching the movie. In other words, an individual has no
expectation of privacy in their *public* video-watching habits.

*Osheske* is not only consistent with the intent and purpose of the VPPA, but it
is also consistent with the federal courts' treatment of an individual's expectations
of privacy in information voluntarily disclosed to a third-party or published to the
general public. *See Rinderer v. Delaware Cnty. Child. & Youth Servs*., 703 F. Supp.
358, 362 (E.D. Pa. 1987) ("Voluntary disclosure amounts to waiver of a privacy
claim."). Indeed, the United States Supreme Court "consistently has held that a

person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) (collecting cases, discussing expectation of privacy in the Fourth Amendment context where the expectation of privacy is higher).

The rule that an individual has no privacy right in information that the individual intentionally and publicly publishes is so ubiquitous that it is embodied in the Restatement (Second) of Torts § 652D, cmt. b (1977):

> There is no liability [for invasion of privacy] when the defendant merely gives further publicity to information about the plaintiff that is already public. **Thus, there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record** . . .
>
> **[T]here is no liability [for invasion of privacy] for giving further publicity to what the plaintiff himself leaves open to the public eye.** Thus he normally cannot complain when his photograph is taken while he is walking down the public street and is published in the defendant's newspaper. **Nor is his privacy invaded when the defendant gives publicity to a business or activity in which the plaintiff is engaged in dealing with the public**.

(emphasis added).

Indeed, Turner appears to agree that the VPPA was designed to protect *private* video viewing habits because that information might "bear[] on [an individual's] personal affairs and concerns." *See* Compl. ¶ 13. With that backdrop, it is apparent Turner made her NNA Certification a matter of her *public persona*. Turner voluntarily discloses that she had completed the Certification course to Meta by publishing it on her Facebook profile. Decl. ¶ 40. Accordingly, the NNA's alleged disclosure to Meta of data related to Plaintiff's Certification (even if it actually occurred, which it did not) does not violate the VPPA's "context-specific" privacy right, because Turner voluntarily discloses this information to Meta. *Eichenberger*, 876 F.3d at 983.

### 4. Turner Has No Privacy Interest in Information She Has Publicized to the General Public.

Turner's claim of a privacy interest in the NNA Certification is further undermined by her public disclosure (and promotion) of her completion of the NNA

11

course and her NNA Certification across the internet. Courts have roundly held that a person has not privacy interest in information voluntarily shared on the internet. *See, e.g.*, *Heldt v. Guardian Life Ins. Co. of Am.*, 16-CV-885-BAS-NLS, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) ("the voluntary sharing of information on social media demonstrates Plaintiff did not have a reasonable expectation of privacy in that information"); *Davidson v. Hewlett-Packard Co.*, 5:16-CV-01928-EJD, 2021 WL 4222130, at *6 (N.D. Cal. Sept. 16, 2021), *aff'd*, 21-16707, 2022 WL 17352186 (9th Cir. Dec. 1, 2022) (finding no reasonable expectation of privacy when Plaintiff repeatedly disclosed medical condition on publicly accessible blog); *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012) (posting to Facebook profile surrenders any expectation of privacy).

Turner operates and promotes a public notary business. Decl. ¶ 41. Her Facebook Page and LinkedIn Profile are both public and tout her affiliation with the NNA and specifically her completion of the NNA Certification course, which she alleges is private information. Decl. ¶¶ 33-40. The Restatement's comments are, again, poignant. *See* Restatement (Second) of Torts § 652D, cmt. b (1977) ("[t]here is no liability [for invasion of privacy] for giving further publicity to what the plaintiff himself leaves open to the public eye"). For all of the same reasons discussed in Subsection (3) above, Turner has no plausible claim of a privacy injury because she publicly disclosed the exact information that forms the basis of her VPPA claim. *See e.g., Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 63 (W.D. Pa. 2023) (dismissing the plaintiff's statutory and common law privacy claims, noting that a claim for "public disclosure of private information requires, obviously 'private facts'").

### 5.    The NNA Did Not Disclose Turner's Certification Course to Meta.

Finally, Turner lacks standing because the NNA unequivocally does not disclose video viewing information to Meta. Specifically, Turner's theory is that:

> [the NNA] uses . . . the Meta Pixel to disclose . . . the specific title of video material that the person purchased (as well as the URL where such video material is available for purchase).

Compl. ¶ 60. The Complaint broadly discusses how the Meta Pixel *could hypothetically be* configured to collect certain information, but she does not allege facts demonstrating that the NNA's Website *was actually configured* to collect either the "specific title of video material" or the "the URL where such video material is available for purchase." *See* Compl. ¶¶ 42-67.

In fact, the NNA's deployment of the Pixel on the Website did not collect either. Decl. ¶ 19. Specifically, the NNA configured the Website and Pixel to not allow Meta to see the "names of online education and training programs that are in a visitor's shopping cart or that are purchased by the visitor." Decl. ¶ 19. Further, the Website uses generic URLs when a visitor places an online educational program into their shopping cart or completes a purchase (*e.g*., https://www.nationalnotary.org/shopping-cart). Decl. ¶ 20. Thus, the URLs do not reveal any information about the program that a visitor purchased.  Because the alleged disclosure, as a matter of fact, did not occur, Turner has no plausible injury in fact.

### B.    PLAINTIFF FAILS TO STATE A VPPA CLAIM.

If Turner could somehow clear the hurdle of demonstrating Article III standing, her Complaint still fails to plead a plausible VPPA Claim. ***First***, the NNA is not a "video tape service provider" as a matter of law. *See* § III(B)(3), *infra.* ***Second***, Turner cannot demonstrate that the NNA knowingly disclosed her personal video viewing information ("PII"). *See* § III(B)(4), *infra.*

### 1.    Rule 12(b)(6) Standard of Review

"To survive a motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face.'" *Opperman v. Path, Inc*., 87 F.Supp.3d 1018, 1035 (N.D. Cal. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true." *Oracle Am., Inc. v. Hewlett Packard Enter. Co*., No. 16-CV-01393-JST, 2017 WL 2672113, at *1 (N.D. Cal. Jan. 19, 2017) (citation omitted). However, the "tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### 2.    This Court Should Take Judicial Notice of Plaintiff's LinkedIn and Facebook pages,  and the NNA's Privacy Policy.

With respect to NNA's Rule 12(b)(6), this Court pursuant to Federal Rule of Evidence 201 should take judicial notice of the copies of Turner's public Facebook and LinkedIn profiles, and her business website which are verified and incorporated into this Motion.[6] A court "may take judicial notice on its own" or "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c) (emphasis added). "In general, websites and their contents may be judicially noticed." *Threshold Enterprises Ltd. v. Pressed Juicery, Inc*., 445 F. Supp. 3d 139, 142 (N.D. Cal. 2020). These documents show that the information that Turner alleges was disclosed by NNA to Meta was not private, and even it was, she consented to the disclosure.

The Court may look beyond the complaint in a Rule 12 motion to "consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the [Turner's] claim; and (3) no party

---

[6] As explained in Section III(A)(1), the Court may consider the Declaration and exhibits in connection with NNA's Rule 12(b)(1) factual challenge. See nt. 2, 5, *supra*.

questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citations omitted); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) ("a court may consider documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'").

All of these requirements are met here. The crux of Turner's claim is that information regarding her NNA Certification was "Private Video Information," and that NNA's alleged disclosure was unauthorized. Compl. ¶¶ 9-12. Public documents demonstrating that information is not private (because Turner actively published that information in the public sphere), and that Turner authorized the alleged disclosure, are central to her claim. The attached copies are authenticated by the NNA's representative, and courts routinely take judicial notice this type of information. *See D'Angelo v. FCA US*, LLC, 726 F. Supp. 3d 1179, 1190 (S.D. Cal. 2024) (taking judicial notice of a website's privacy policy and screenshots of the website's homepage and initial cookie disclosure); *Al -Ahmed v. Twitter, Inc.,* 603 F. Supp. 3d 857, 869 (N.D. Cal. 2022) (judicial notice of the landing page of the plaintiff's Twitter account, a public post on the account, and a press release page); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 813–14 (N.D. Cal. 2020) (judicial notice of Google's Terms of Service, Privacy Policy, and a Google blog post); *Lindora, LLC v. Limitless Longevity LLC*, No. 15-CV-2847-JAH (KSC), 2016 WL 6804443, at *3 (S.D. Cal. Sept. 29, 2016) (judicial notice of social media); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1205 (N.D. Cal. 2014) (judicial notice of the LinkedIn profiles of the named plaintiffs).

### 3.     The NNA is not a "Video Tape Service Provider."

To state a VPPA claim, plaintiffs must allege defendant (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. *See* § 18 U.S.C. § 2710(b)(1). A business is a video tape service provider" ("VTSP") if they are

15

"engages in the business" of renting, selling or delivering "prerecorded video cassette tapes" or "similar audio visual materials." 18 U.S.C. § 2710(a)(4).

Turner's Complaint is devoid of any allegations demonstrating: (a) the programs the NNA provides are "prerecorded video cassette" or "similar audio-visual materials," or (b) that the NNA is primarily in the business of renting, selling or delivering those materials. *See id*.

### a.    The NNA is Not Primarily "Engaged the Business" of Renting, Selling or Delivering Covered Audio Visual Materials.

Turner does not allege any facts demonstrating that the NNA is primary "engaged in the business" of selling covered are "prerecorded video cassette" or "similar audio-visual materials" (generally referred to as "covered video materials"). It not sufficient that a company is "peripherally or passively involved" in delivery of covered video materials. *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). Rather, the delivering covered video materials must be the "focus of the defendant's work." *Id*; *see also Rodriguez v. JD Boden Servs., Inc.*, 2024 WL 559228, at *4 (S.D. Cal. Feb. 12, 2024) (The "defining feature, or at least not a *de minimus* feature, of the business" must be "the rental, sale or delivery of audio visual materials."); *Walsh*, 2024 WL 3593569, at *5 (mere presence of videos on a website is insufficient to establish that videos are "a focus" of defendant's work).

Thus, merely pleading, as Turner does here, that the NNA "[h]ost[s] and create[es] prerecorded videos for the purpose of marketing its products does not suffice to plausibly allege [that the NNA] is a video tape service provider." *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023). *See* Compl. ¶ 76. And while  courts have not outlined the exact contours of when the delivery of covered video materials rises to the level of being the "defining feature" and  "focus of the defendant's work," Turner does not make any factual allegation(s) that support the requisite level of focus exists here. *Rodriguez*, 2024 WL 559228, at *4; *In re Vizio*,

16

*Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-22. On the contrary, Turner's own allegations recognize that the NNA is multifaceted non-for-profit corporation that "serv[es] notaries and train[s] persons to be notaries through certifications, trainings, seminars, conferences, and printed and online educational materials that accompany these programs." Compl. ¶ 14. And the NNA has submitted a declaration attesting to the fact that only a small sliver of its operations involve online education (1-10%) and that the majority of the NNA's operations are devoted to public advocacy, bonding and insurance, product sales, and networking directories.

Turner's only relevant allegation is her red herring claim NNA is "engaged in the business of selling and delivering" covered video materials "to consumers nationwide." Compl. ¶ 76. But the relevant inquiry is whether delivering covered video materials is the "defining feature" the NNA's business (not where a business delivers its product. *Rodriguez*, 2024 WL 559228, at *4. Indeed, under Turner's interpretation of the VPPA, any business that has a website that hosts a single covered video would be transformed into a "video tape service provider." Such an interpretation stretches the plain meaning of the term "video tape service provider" well beyond the intended statutory purpose of the VPPA.

### b. Turner Does Not Adequately Allege that the NNA Sells Covered "Audio-Visual Materials."

Turner's Complaint also fails to adequately allege that the online educational programs offered by the NNA are covered video materials (i.e., either a "prerecorded video cassette" or "similar audio-visual materials"). "Congress's concern with privacy and protecting the confidentiality of an individual's choices is relevant context to the Senate Report's discussion of similar audio visual materials, such as laser discs, open-reel movies, and CDI technologies.'" *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal Aug. 10, 2012) (citing S. Rep. No. 100–599 at 12). The "similar" materials contemplated by Congress were hours-

long video recordings such as motion pictures ("open-reel movies") made available at the typical brick-and-mortar stores that existed when Congress drafted the VPPA.[7] Plaintiff fails to plead any facts describing how or otherwise suggesting that the "video products and services" referenced in her Complaint are similar to the prerecorded video cassette tapes and other materials that Congress sought to protect under the VPPA.

### 4.    Turner Also Fails to Adequately Allege "Disclosure" Under the VPPA.

Next, Turner also fails to allege facts demonstrating that the NNA: (a) knowingly, (b) disclosed, (c) "information [that] identifies [Turner] as having requested or obtained specific video materials or services" from the NNA (*i.e.*, PII). 18 U.S.C. § 2710(b)(1); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). As set forth below, Turner fails this prong for serval reasons:

### a.    First, the Alleged Disclosure Did Not Occur.

As set forth in § III(A)(5), *supra*, the NNA configured the Meta Pixel not to disclose the "specific title of video material" or the "URL where such video material is available for purchase" to Meta. Decl. ¶ 19; Compl. ¶¶ 42-67. Because the alleged disclosure did not occur, Turner's VPPA claim fails as a matter of law.

### b.    Second, Turner Cannot Demonstrate a Disclosure of PII Because the Information Allegedly Disclosed is Public.

As set forth above in III(A), *infra*, Congress enacted the VPPA to codify a narrow and "context-specific extension of the substantive right to privacy" in an individual's "video-viewing history." *Eichenberger*, 876 F.3d at 983 (emphasis omitted). The VPPA protects from the disclosure of *private* information, but that privacy interest evaporates when individual makes that information public. *See Osheske*, 700 F. Supp. 3d at 926-27. Turner has no privacy interest in her NNA

---

[7] *See also* "laser disc" (1), https://www.merriam-webster.com/dictionary/laser%20disc ("one containing a video recording (as of a movie)") (last accessed March 6, 2025).

Certification course because she publicized taking that course on her Facebook profile, LinkedIn Profile, and business website. *See* III(A), *infra*,

### c.    Third, Turner Does Not Allege Facts Sufficient to Demonstrate that a "Disclosure" of PII Occurred.

The VPPA requires Turner to allege facts demonstrating that the information that the NNA disclosed "identifies [Turner] as having requested or obtained specific video materials or services" from the NNA (*i.e.*, PII). 18 U.S.C. § 2710(a)(3). Turner must demonstrate that the NNA disclosed "information that would readily permit an ordinary person to identify *that Turner requested* the covered video material from the NNA. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 267; *Eichenberger*, 876 F.3d at 985 (adopting the Third Circuit's "ordinary person" standard).

Turner's theory is Meta has able to determine *she* obtained the NNA Certification course because Meta collected her Facebook ID. *See* Compl. ¶ 62. Courts discussing the Meta Pixel have observed that it is able to collect this information by interacting with "cookies" (small text files) that are placed on the user's browser." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020). These cookies are placed on a device when a user creates or logs in to a Facebook account, and the cookies store the user's FID. *Id.*

Thus, for Meta to identify Turner as having requested or obtained specific NNA content, Facebook would have had to place cookies on the specific device she used to access the NNA's Certification course. However, Turner only alleges that she *had* a Facebook account, not that she, *at that time that the NNA allegedly disclosed her Certification course to Meta*, was either: (a) contemporaneously logged into her Facebook account, or (b) using a personal device that carried Facebook cookies. Moreover, Turner does not allege that the NNA ever possessed or disclosed Plaintiff's FID. Therefore, Turner fails to allege facts sufficient to demonstrate that the NNA disclosed "information that would readily permit an ordinary person to identify" *that*

1    ***Turner requested*** the covered video material from the NNA.

### d.    Fourth, an FID is not PII.

3    Even Turner properly alleged that the Meta Pixel captured Turner's FID, an FID

4    is not PII. The information collected and stored by Meta Pixel, on its face, is not "the

5    kind of information that would ***readily permit an ordinary person*** to identify a specific

6    individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig*.,

7    827 F.3d at 267 (emphasis added); *Edwards v. Learfield Commc'ns, LLC*, 697 F.

8    Supp. 3d 1297, 1308 (N.D. Fl. 2023) ("Although Plaintiffs do allege that the

9    [defendant's website] transmits metadata, which contains c_user IDs and 'may'

10   contain video titles, [citation omitted], they offer no facts explaining how Facebook

11   accesses that metadata, why doing so does not require technical expertise, or how

12   much metadata Facebook has to comb through to discover someone's c_user ID and

13   the video titles.").

14   Even if this code could be deciphered by an ordinary person without technical

15   expertise, Plaintiff has not alleged facts establishing that the Facebook ID ("FID")

16   contained within the code constitutes PII. An FID is merely a static digital identifier.

17   The VPPA "protects personally identifiable information that ***identifies a specific***

18   ***person*** and ***ties that person to particular videos that the person watched.***" *In re*

19   *Nickelodeon*, 827 F.3d at 285 (quoting *In re Hulu Priv. Litig*., No. C 11-03764 LB,

20   2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014) (emphasis added)). *See also*

21   *Robinson,* 152 F. Supp. 3d at 182 ("information actually 'disclos[ed]' by a 'video

22   tape service provider'...***must itself do the identifying***...***not information disclosed by***

23   ***a provider, plus other pieces of information*** collected elsewhere by non-defendant

24   third parties.") (emphasis added). The sole information allegedly disclosed—the

25   FID—is not itself identifying because FIDs are merely static digital identifiers. Static

26   digital identifiers include a unique device identifier that is "randomly generated

27   when a user initially sets up his device and should remain constant for the lifetime

28   of the user's device." *Nickelodeon*, 827 F.3d at 282, n.124 (citing Ellis v. Cartoon

20

Network, Inc., 803 F.3d 1251, 1254 (11th Cir. 2015). These random strings of numbers, when viewed by an ordinary person, do not identify a person. Rather, "[t]o an average person, an IP address o*r a digital code in a __cookie file__ would likely be of little help in trying to identify an actual person.*" *Id.* at 283 (emphasis added). Although some courts have since held an FID is PII because it can be plugged into Facebook and PII *may* be found on the resulting Facebook profile, this multi-step investigative process does not make the FID, shared through the cookies, PII.

In *Nickelodeon*, the type of information at issue was plaintiff's IP address, browser and operating system settings, and *a computing device's unique device identifier. Id*. at 281-82. The court held "whatever else 'personally identifiable information' meant in 1988, it did not encompass" such static digital identifiers. *Id.* at 286. Unlike other statutes which "gave the FTC authority to expand the types of information that count as personally identifying under that law," the VPPA "does not empower an administrative agency to augment the definition of 'personally identifiable information'. . . The meaning of that phrase in the Act is . . . more static." *Id.* Congress's amendment of the VPPA in 2013 demonstrates Congress "was keenly aware of how technological changes have affected the original Act," yet "did not update the definition of [PII]*.*" *Id*. "What's more, it chose not to do so despite . . . submitted written testimony that" specifically argued for "the addition of ... account identifiers to the definition of [PII]." *Id*. at 288.

FIDs are **not** PII because they are merely static digital identifiers automatically sent through a cookie file to a single company, which is nothing like the purposeful and public disclosures of actual names with video viewing history to the public at large. *See id.* at 286; *Edwards,* 2023 WL 8544765, at *8. "The classic example will always be a video clerk leaking an individual customer's video rental history," and "every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *Nickelodeon*, 827 F.3d at 286.

e.      **Fifth, Turner Does Not Adequately Allege a "Knowing" Disclosure by the NNA.**

Plaintiff fails to allege facts suggesting that NNA *knowingly* disclosed PII. Plaintiff does not allege the NNA had any way to know whether she, or any other user, had an FID, much less what were those FIDs. Therefore, the Complaint does not and cannot plausibly assert the NNA *knowingly* disclosed Plaintiff's FID, let alone PII, to Facebook.

\* \* \*

For all the reasons set forth above, this Court should dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).

### C.      THE VPPA, AS INTERPRETED AND APPLIED BY PLAINTIFF, IS UNCONSTITUTIONAL.

#### 1.      As Applied, the VPPA Violates the Fifth Amendment.

If the VPPA is interpreted in the manner Plaintiff advocates, then it is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law").) "This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause" and "requires the invalidation of laws that are impermissibly vague." *F.C.C.*, 567 U.S. at 253. Due Process requires "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id*.

The recent explosion of VPPA litigation is due to vague references to "any person*,* engaged in the *business* . . . of rental, sale or *delivery* of prerecorded video

cassette tapes or similar audio visual materials," and "any renter, purchaser, or *subscriber* of *goods or services* from a video tape service provider." 18 U.S.C. § 2710(a)-(b) (emphasis added). Plaintiffs in cases such as this one are advocating for the statute to apply to entities that had no notice it applied to them or the conduct at issue in this case. Entities are being arbitrarily and discriminatorily subjected to class action lawsuits and potentially could face multi-million-dollar statutory damages and reputational injury based on their otherwise legal marketing practices. *See* 18 U.S.C. § 2710(c); *see also F.C.C.*, 567 U.S. at 255 ("reputational injury provides further reason for granting relief"). That violates Due Process.

## 2.     As Applied, the VPPA Violates the First Amendment.

"Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I. Restrictions on access to information in private hands, such as customer data, violate the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011) (Vermont statute purporting to restrict pharmacies from selling retained information about drug prescribing habits of doctors to pharmaceutical companies for marketing purposes violated First Amendment); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999) (FCC regulation violated First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience).

Like the information in *Sorrell* and *U.S. West*, the information at issue here is commercial speech. Any restriction must meet three conditions: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). In addition, the "language may not be unconstitutionally vague or its prohibitions too broad in their

1   sweep, failing to distinguish between conduct that may be proscribed and conduct that

2   must be permitted." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973).

3                               **a.    No Substantial Interest**

4           There is no "substantial interest" in restricting disclosure of "information which

5   identifies a person as having requested or obtained specific video materials or

6   services." 18 U.S.C. § 2710. "[W]ithout persuasive evidence that a novel restriction on

7   content is part of a long (if heretofore unrecognized) tradition of proscription, a

8   legislature may not revise the judgment [of] the American people, embodied in the

9   First Amendment, that the benefits of its restrictions on the Government outweigh the

10  costs." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 792 (2011). There is no

11  "persuasive evidence" that these restrictions are part of a long "tradition of

12  proscription." *Id.* The history of movies began with attending movie showings in

13  public theaters.

14                              **b.    Not Appropriately Tailored**

15          Even if there is a "substantial" interest, "[t]here must be a 'fit between the

16  legislature's ends and the means chosen to accomplish those ends.'" *Sorrell*, 564 U.S.

17  at 57. "These standards ensure . . . the State's interests are proportional to the resulting

18  burdens placed on speech . . . ." *Id.*  The consent requirements in § 2710(b)(2)(B)(i)-

19  (iii) fail these standards. The purported privacy interest ends once "informed,

20  written consent" is obtained. Congress should have stopped there: "informed,

21  written consent ... ***that*** ..." acknowledges informed consent can be obtained in many

22  ways. Elsewhere in the federal code, "implied consent" stands on its own as a

23  principle subject to rulemaking, *see, e.g.*, 38 U.S.C. § 7331, underscoring the lack

24  of a single definition.

25          But §2710(b)(2)(B)(i)-(iii) does not materially advance the purported

26  interests and goes far beyond the prevailing understanding of enforceability of

27  online Terms and Conditions or Privacy Policies. *See, e.g.*, *Meyer v. Uber Techs.,

28  Inc.*, 868 F.3d 66 (2d Cir. 2017) ("clickwrap" agreements "routinely" enforced).

The VPPA, when applied to the NNA and the actions involved in this case, infringes upon the NNA's Due Process and First Amendment rights. If the VPPA is interpreted in the manner that Plaintiff suggests, the NNA would be classified as a "video tape service provider" and, therefore, prohibited from sharing otherwise lawful commercial information with third parties. This would be the case even though the NNA bears no resemblance to the "video rental store" that Congress had in mind when drafting the VPPA.

Dated:  March 7, 2025                    CLARK HILL LLP

                                         By: */s/ Myriah V. Jaworski*
                                             Myriah Jaworski

                                         *Attorneys for Defendant National Notary*
                                         *Association*

# **Index 1**

(List of Other VPPA Cases Filed by Hedin LLP)

1. *Cochenour v. 360Training.com, Inc.*, No. 1:25-CV-00007 (W.D. Tex. Jan. 2, 2025).

2. *Michael Archer v. NBC Universal Media LLC et al*, No. 2:24-CV-10744 (C.D. Cal. Dec. 13, 2024).

3. *Damrau et al v. Colibri Group, Inc.,* No. 4:24-CV-01441 (E.D. Mo. Oct. 25, 2024).

4. *Kueppers et al v. Zumba Fitness, LLC*, 0:24-CV-61983 (S.D. Fla. Oct. 23, 2024).

5. *Guereca v. Motorsport.tv Digital, LLC,* No. 1:24-CV-24066 (S.D. Fla. Oct. 21, 2024).

6. *Lovett v. Continued.com, LLC*, No. 1:24-CV-00590 (S.D. Ohio Oct. 16, 2024).

7. *Manza, Dana v. Pesi, Inc.,* No. 3:24-CV-00690 (W.D. Wis. Oct. 3, 2024).

8. *Jordan v. Crunch, LLC*, No. 1:24-CV-07118 (S.D. N.Y. Sept. 19, 2024).

9. *Comarow v. TRTCLE, Corp.*, No. 1:24-CV-07096 (S.D. N.Y. Sept. 18, 2024).

10. *Carruth v. KD Creatives, Inc.*, No. 2:24-CV-02484 (E.D. Cal. Sept. 12, 2024).

11. *Harlos v. LexVid Services, Inc.*, No. 3:24-CV-01621 (S.D. Cal. Sept. 11, 2024).

12. *Harper, Kendra v. NBI, Inc.*, No. 3:24-CV-00644 (W.D. Wis. Sept. 11, 2024).

13. *Ezpeleta v. FurtherEd, Inc.*, No. 1:24-CV-06709 (S.D. N.Y. Sept. 4, 2024).

14. *Stachovic v. Pig Newton Inc.*, No. 1:24-CV-06589 (S.D. N.Y. Sept. 3, 2024).

15. *Michael Archer et al v. Shout! Factory LLC*, No. 2:24-CV-07056 (C.D. Cal. Aug. 20, 2024).

16. *Golland et al v. Major League Baseball Advanced Media, L.P.*, No. 1:24-CV-06270 (S.D. N.Y. Aug. 20, 2024).

17. *Silva v. Yanka Industries, Inc.*, No. 3:24-CV-05264 (N.D. Cal. Aug. 16, 2024).

18. *Macalpine et al v. Onnit, Inc.*, No. 1:24-CV-00933 (W.D. Tex. Aug. 15, 2024).

19. *Feller et al v. Alliance Entertainment, LLC et al*, No. 0:24-CV-61444 (S.D. Fla. Aug. 8, 2024).

20. *Brown et al v. WalMart, Inc.*, No. 5:24-CV-05144 (W.D. Ark. Jul. 15, 2024).

CASE NO.: 2:25-CV-00334-FMO-PD

NOTICE OF MOTION AND RULE 12 MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT