FRANK S. HEDIN (SBN 291289)
**HEDIN LLP**
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:   (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:       fhedin@hedinllp.com

*Counsel for Plaintiff and Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA TURNER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>V.<br><br>NATIONAL NOTARY ASSOCIATION,<br><br>        Defendant. | Case No. 2:25−cv−00334−FMO−PD<br><br>**PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 3

III.  LEGAL STANDARDS .................................................................................... 4

IV.   ARGUMENT ................................................................................................... 5

  A.   Plaintiff has Article III Standing, and the Court has Subject-Matter Jurisdiction 5

  B.   Plaintiff has Sufficiently Pled Her VPPA Claim. .............................. 11

    i.    Defendant is a Videotape Service Provider ................................... 12

    ii.   Defendant Made a Knowing Disclosure Under the VPPA .......... 15

    iii.  An FID is Personally Identifiable Information ............................ 16

  C.   The VPPA is Constitutional ............................................................... 18

V.    CONCLUSION .............................................................................................. 24

REBUTTAL INDEX OF HEDIN LLP CASES .............................................

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................4

*Bd. of Trs. of State Univ. of New York v. Fox*,
 492 U.S. 469 (1989)...........................................................................19, 22

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..................................................................................4

*Boehner v. McDermott*,
 484 F.3d 573  (D.C. Cir. 2007)...............................................................20

*Boelter v. Advance Magazine Publishers Inc.*,
 210 F. Supp. 3d 579 (S.D.N.Y. 2016) .....................................................20

*Boelter v. Hearst Commc'ns, Inc.* ("*Hearst I*"),
 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ........................................20, 22, 23

*Boelter v. Hearst Commc'ns, Inc.* ("*Hearst II*"),
 269 F. Supp. 3d 172 (S.D.N.Y. 2017). .....................................................20

*Bowen v. Energizer Holdings, Inc.*,
 118 F.4th 1134 (9th Cir. 2024). ................................................................8

*Cook v. GameStop, Inc.*,
 689 F. Supp. 3d 58 (W.D. Pa. 2023)........................................................11

*Czarnionka v. Epoch Times Ass'n, Inc.*,
 No. 22 CIV. 6348 (AKH) (S.D.N.Y. Nov. 17, 2022)...............................16

*Davidson v. Hewlett-Packard Co.*,
 No. 5:16-CV-01928-EJD (N.D. Cal. Sept. 16, 2021)...............................10

*Edwards v. Learfield Commc'ns, LLC*,
 697 F. Supp. 3d 1297 (N.D. Fl. 2023). .....................................................18

*Eichenberger v. ESPN, Inc.*,
 876 F.3d 979 (9th Cir. 2017). .......................................................5, 6, 7, 17

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Feldman v. Star Trib. Media Co. LLC*,
    659 F. Supp. 3d 1006 (D. Minn. 2023)...................................................................12

*Fla. Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995)................................................................................19, 22

*Freedom to Travel Campaign v. Newcomb*,
    82 F.3d 1431 (9th Cir. 1996). ..............................................................................20

*Frisby v. Schultz*,
    487 U.S. 474 (1988)................................................................................................19

*Ghanaat v. Numerade Labs, Inc.*,
    689 F. Supp. 3d 714 (N.D. Cal. 2023). ...............................................................15

*Harris v. Pub. Broad. Serv.*,
    662 F. Supp. 3d 1327 (N.D. Ga. 2023). ...............................................................16

*Heerde v. Learfield Commc'ns, LLC*,
    741 F. Supp. 3d 849 (C.D. Cal. 2024). ...............................................................17

*Heldt v. Guardian Life Ins. Co. of Am.*,
    No.16-CV-885-BAS-NLS (S.D. Cal. Feb. 15, 2019) ............................................10

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ..............................................................................20

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017). ...............................................................12

*In re: Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016). .......................................................................6, 7, 18

*Jackson v. Fandom, Inc.*,
    No. 22-CV-04423-JST (N.D. Cal. July 20, 2023) ...............................................17

*Lebakken v. WebMD, LLC*,
    640 F. Supp. 3d 1335 (N.D. Ga. 2022). ...............................................................15

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001). ...............................................................................4

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Li v. Georges Media Grp. LLC*,
   No. CV 23-1117 (E.D. La. Nov. 3, 2023)..................................................15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................5

*Mata v. Zillow Grp., Inc.*,
   No. 24-CV-01095-DMS-VET (S.D. Cal. Dec. 18, 2024). ......................14

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011). ...................................................................4

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015). .................................................................11

*Myers et al., v. Nat'l Assoc. Stock Car Auto Racing, Inc.*,
   No. 3:23-cv-00888 (W.D. NC). ................................................................21

*N. Star Int'l v. Arizona Corp. Comm'n*,
   720 F.2d 578 (9th Cir. 1983). .....................................................................4

*National Notary Association Corp. v. National Equity Settlement Services, Inc.*,
   No. 2:08-cv-01639 (D. Ariz). ...................................................................15

*Osheske v. Silver Cinemas Acquisition Co.*,
   700 F. Supp. 3d 921 (C.D. Cal. 2023). .....................................................10

*Perry v. Cable News Network, Inc.*,
   854 F.3d 1336 (11th Cir. 2017). ..............................................................6, 7

*Peterson v. Learfield Commc'ns, LLC*,
   No. 8:23-cv-00146 (D. Neb.)....................................................................21

*Rodriguez v. JD Boden Servs., Inc.*
   (S.D. Cal. Feb. 12, 2024). ........................................................................14

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024). .....................................................................7

*Saunders v. Hearst Television, Inc.*,
   711 F. Supp. 3d 24 (D. Mass. 2024)..........................................3, 18, 21, 22

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.,*
  343 F.3d 1036 (9th Cir. 2003). ......................................................................... 4

*Sellers v. Bleacher Rep., Inc.,*
  No. 23-CV-00368-SI (N.D. Cal. July 28, 2023).......................................... 16

*Sharpe v. GT's Living Foods, LLC,*
  No. CV 19-10920 FMO (GJSX) (C.D. Cal. Feb. 1, 2021). ........................... 5

*Spokeo, Inc. v. Robins (Spokeo I ),*
  578 U.S. 330 (2016).......................................................................................... 5

*Stanley v. Georgia,*
  394 U.S. 557 (1969)........................................................................................ 21

*Stark v. Patreon, Inc.,*
  635 F.Supp.3d 841 (N.D. Cal. 2022) ............................................................. 13

*Stark v. Patreon, Inc.,*
  656 F. Supp. 3d 1018 (N.D. Cal. 2023). ................................................... 3, 19

*Sterk v. Redbox Automated Retail, LLC,*
  770 F.3d 618 (7th Cir. 2014). ...................................................................... 6, 7

*Trans Union Corp. v. F.T.C.,*
  245 F.3d 809 (D.C. Cir. 2001)........................................................................ 21

*United States v. Meregildo,*
  883 F. Supp. 2d 523 (S.D.N.Y. 2012). ......................................................... 11

*Walsh v. California Cinema Invs. LLC,*
  No. 2:23-CV-09608-ODW (AJRX) (C.D. Cal.)............................................. 21

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000). ........................................................................ 4

**Statutes**
California Government Code § 8201 ................................................................... 10

Health Insurance Portability and Accountability Act of 1996,
  42 U.S.C. § 1320d–2......................................................................................... 24

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Michigan Preservation of Personal Privacy Act (the "MPPPA"),
    Mich. Compl. Laws § 445.1711. .............................................................................20

Video Privacy Protection Act,
    18 U.S.C. § 2710.................................................................................................passim

**Other Authorities**
Am. Library Ass'n, State Privacy Laws Regarding Library Records,
    ALA.org,..............................................................................................................23

Hayley Tsukayama, Electronic Frontier Foundation, "Texas is Enforcing Its State
    Data Privacy Law.  So Should Other States"
    (Jan. 22, 2025). ....................................................................................................23

Senate Rep. 100–599 (1988) ...........................................................................18, 19, 22

**Rules**
Federal Rule of Civil Procedure 12................................................................................ 1

**Constitutional Provisions**

U.S. Const. amend. I. .................................................................................................passim

U.S. Const. amend. V. .........................................................................................20, 21

U.S. Const. art. III. .....................................................................................1, 5, 9, 10

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Teresa Turner submits this response and incorporated memorandum of law in opposition to the Motion to Dismiss (ECF No. 14 (the "Motion" or "Mot.")) filed by Defendant National Notary Association.

## I.    <u>INTRODUCTION</u>

In this putative class action, Plaintiff alleges that Defendant disclosed her and numerous other persons' personally identifying video-purchase-related information (pertaining to purchases they made on Defendant's www.nationalnotary.org website) to Meta Platforms, Inc. ("Meta"), without the requisite consent, in violation of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), invading their privacy and thus concretely harming them in the process. (*See* ECF No. 1).[1] Defendant has responded to the Complaint by moving to dismiss pursuant for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim for relief pursuant to Rule 12(b)(6).

<u>First</u>, Defendant moves to dismiss the Complaint for lack of subject-matter jurisdiction on the ground that Plaintiff lacks Article III standing to pursue her VPPA claim. The argument is completely without merit. The Complaint adequately alleges that Defendant's VPPA-violative disclosures of Plaintiff's information to Meta invaded her privacy, thereby working concrete and particularized harm sufficient to satisfy Article III's standing requirements pursuant to well-established Ninth Circuit precedent. Defendant nonetheless argues that Plaintiff cannot claim a privacy interest in the information she alleges Defendant disclosed to Meta because Plaintiff had previously made that same information public, and additionally disputes the veracity

---

[1] Defendant has incorrectly and disingenuously argued that the Complaint is "nearly identical" or "substantially similar" to other cases filed by the firm representing Plaintiff because it describes the functionality of the Meta Pixel. Defendant is wrong. Plaintiff has offered a Rebuttal Index detailing the differences in each case, so that this Court can see Defendant's oversimplification and near-slanderous remarks are inapposite.

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

of Plaintiff's allegations that Defendant disclosed her information to Meta at all. (ECF No. 14 at 6-13). But Defendant has submitted no evidence to show that Plaintiff ever disclosed the fact that she had purchased particular prerecorded video materials from Defendant to anyone. And while Defendant disputes that the Meta Pixel technology installed on its website transmitted Plaintiff's (or anyone else's) information to Meta, the Complaint specifically alleges that it did – presenting a factual dispute concerning the merits of Plaintiff's claim for relief (rather than her Article III standing to proceed in federal court) that is plainly not susceptible to resolution on a motion to dismiss. In any event, as explained in the declaration of Elliot Jackson ("Jackson Decl.") accompanying this opposition brief, Plaintiff's counsel conducted a pre-filing investigation into the workings of the Meta Pixel technology installed on Defendant's website, which confirmed that, at least up until the date of this case was filed, Defendant's website did, in fact, systematically transmit purchasers' personally identifying video purchase-related information to Meta when a purchaser clicked the "Order Now" button to complete a purchase of prerecorded video material.

Second, Defendant moves to dismiss the Complaint for failure to state a claim for relief on the ground that Complaint does not allege facts plausibly demonstrating that Defendant is a "videotape service provider," that Defendant "knowingly" disclosed Plaintiff's information to Meta, or that the information Defendant allegedly disclosed is "personally identifiable information," as each of these quoted terms is defined in the statute. (ECF No. 14 at 15-22). This argument, too, is baseless. The factual allegations of the Complaint are more than sufficient to establish that Defendant (as the operator of a business that sells prerecorded videos to consumers nationwide) is a videotape service provider, that Defendant (having installed the Meta Pixel technology on its website to enhance its marketing capabilities) knowingly transmitted Plaintiff's purchase-related information to Meta via that technology, and that Plaintiff's FID (information capable of specifically identifying Plaintiff by name, among other

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

personal details) qualifies as personally identifiable information. (*See* ECF No. 1, ¶ 58); 18 U.S.C. § 2710(a)(4).

Third, Defendant asks the Court to strike down the VPPA, a federal statute duly enacted by Congress more than 35 years ago, as unconstitutionally vague under the Due Process Clause and unduly restrictive of commercial speech in violation of the First Amendment.  The Court should reject this out of hand. No court has ever concluded that the VPPA violates the U.S. Constitution – although numerous courts have rejected the same constitutional challenges to the statute that Defendant makes here. *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1039 (N.D. Cal. 2023) ["*Stark II*"]; *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024).  This Court should likewise decline to strike down the VPPA as unconstitutional.

The Court has subject-matter jurisdiction, and the Complaint states a claim for relief.  The Motion should be denied.

## II.   FACTUAL BACKGROUND

On January 13, 2025, Plaintiff Teresa Turner commenced this action to redress Defendant National Notary Association's practice of knowingly transmitting customers' personally identifiable information, including their Facebook IDs ("FIDs") and video purchase-related information (the title of each of the specific videos that the consumer requested or obtained on Defendant's www.nationalnotary.org website and URL where such a product is available for purchase) in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 et seq. ("VPPA").  *See* (ECF No. 1, ¶¶ 1-3); 18 U.S.C. § 2710(b)(1).  Defendant installed the Meta Pixel on its e-commerce website www.nationalnotary.org, where it sells prerecorded videos such as online courses and certification programs.  (*Id.*, ¶ 58).  The personally identifiable information Defendant disclosed to Meta includes the consumers' Facebook IDs ("FIDs"), the specific titles of the prerecorded videos that each consumer requested or obtained, as well as the

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

corresponding URLs where those videos were available for purchase. (*See* ECF No. 1, ¶¶ 1, 63); 18 U.S.C. § 2710(a)(3).

On March 7, 2025, Defendant moved to dismiss the Complaint. (ECF No. 14).

## III.    <u>LEGAL STANDARDS</u>

**<u>Rule 12(b)(1)</u>**: An attack "on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial challenge, a court generally "must accept as true all material allegations." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). However, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.,* 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**<u>Rule 12(b)(6)</u>**: In evaluating a motion to dismiss, the Court must "accept all material allegations in the complaint as true and construe them in the light most favorable to" the nonmoving party. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## IV.   <u>ARGUMENT</u>

### A. Plaintiff has Article III Standing, and the Court has Subject-Matter Jurisdiction

First, the factual allegations of the Complaint adequately establish that Defendant's disclosures of Plaintiff's VPPA-protected information to Meta worked concrete, particularized harm sufficient to satisfy the injury-in-fact prong of Article III's standing requirement.

To establish Article III standing, a plaintiff must allege an "irreducible constitutional minimum" of an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The burden of establishing an injury in fact is a low threshold. *See Sharpe v. GT's Living Foods, LLC*, No. CV 19-10920 FMO (GJSX), 2021 WL 1035119, at *2 (C.D. Cal. Feb. 1, 2021). For an injury to be concrete, it "must be '*de facto*'; that is, it must actually exist." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 340 (2016). "[A]n intangible harm may qualify as an injury in fact," but the court examining such harm for concreteness must evaluate "both history and the judgment of Congress[.]" *See Eichenberger*, 876 F.3d at 982. Plaintiff has adequately alleged each element necessary for Article III standing, but because Defendant only challenges the "injury-in-fact" element, only that element is addressed below.

Contrary to Defendant's suggestion otherwise, Plaintiff has adequately alleged an injury-in-fact. The Complaint alleges that Defendant systematically transmitted three critical pieces of information to Meta: "(1) the unencrypted FID for each purchaser; (2) detailed information revealing the titles and subject matter of the prerecorded videos requested or obtained by each of its purchasers; and (3) the URL where such videos are available for purchase, without the consumer's consent and in clear violation of the VPPA." (*See* ECF No. 1, ¶¶ 1-3, 41). The Complaint next alleges Plaintiff and putative class members "suffered invasions of their statutorily protected right to privacy (as afforded by the VPPA), as well as intrusions upon their private

affairs and concerns that would be highly offensive to a reasonable person" as a result of Defendant's disclosures.  (*See id.*, ¶ 71).  The Complaint then connects Defendant's disclosure practices directly to Plaintiff, demonstrating the concreteness of her injury by providing the exact date of her purchase and alleging the information communicated from Defendant to Meta.  (*See id.*, ¶ 9).  The Complaint further connects Defendant's disclosure to putative class members as well by alleging that "whenever Plaintiff or any other person purchased prerecorded video material from Defendant on its website, Defendant disclosed to Meta (inter alia) the specific title of the video material that was requested or obtained (including the URL where such material is available for purchase), along with the FID of the person who requested or obtained it (which, as discussed above, uniquely identified the person)."  (*See id.*, ¶ 63).

The foregoing allegations mirror the same nonconsensual disclosures of a person's protected information to third parties that this Circuit has found to be sufficient to establish Article III standing.  *See Eichenberger*, 876 F.3d at 984 (joining the Third and Eleventh Circuits); *see also In re: Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("By alleging that Redbox disclosed their personal information in violation of the VPPA, Sterk and Chung have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress.");  *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339–41 (11th Cir. 2017) ("[W]e hold that a plaintiff such as Perry has satisfied the concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure.").  More recently, the Second Circuit concluded that Article III standing existed for a VPPA plaintiff who alleged the same conduct as Plaintiff alleges here.  *See Salazar v. Nat'l*

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  *Basketball Ass'n*, 118 F.4th 533, 542 (2d Cir. 2024).  In doing so, the Second Circuit

2  explained:

> [W]e similarly have "no trouble" holding here that Salazar's alleged harm
> is sufficiently concrete to withstand dismissal. Like *Bohnak*, Salazar's core
> allegation is that his personally identifiable information was exposed to an
> unauthorized third party. And Salazar doesn't just allege that his data
> was *exposed* to a third party; rather, he asserts that it was *disclosed* as a
> result of an arrangement between the NBA and Meta pursuant to which the
> NBA deliberately uses the Facebook Pixel. This alleged harm is closely
> related to the public disclosure of private facts analog.

9  *See id.* (internal citations omitted).

10      In this case, Plaintiff specifically alleges that she suffered an invasion of privacy

11  that is highly offensive from Defendant's nonconsensual disclosure to Meta of the

12  specific titles of prerecorded video materials she requested or obtained from

13  Defendant.  (*See* ECF No. 1, ¶ 71).  These well-pled allegations bear a close

14  relationship to the "public disclosure of private facts" analog, which is well established

15  as a concrete injury for Article III purposes.  *See Eichenberger*, 876 F.3d at 984;

16  *Salazar*, 118 F.4th at 542; *In re: Nickelodeon*, 827 F.3d at 274; *Sterk*, 770 F.3d at 623;

17  *Perry*, 854 F.3d at 1341. Thus, as in each of the above-cited decisions, Plaintiff has

18  alleged a concrete injury caused by Defendant's nonconsensual disclosure to Meta of

19  the specific titles of the prerecorded video materials she requested or obtained.  (*See*

20  ECF No. 1, ¶¶ 1-3, 9, 41, 63, 71).  Indeed, *Eichenberger* makes clear that

21  "*every* disclosure . . . offends the interests that the statute protects."  *See* 876 F.3d at

22  984.  There is thus no question that Plaintiff has Article III standing in this case.

23      Defendant nevertheless argues in the Motion that Plaintiff lacks Article III

24  standing "because she does not plead a plausible VPPA claim" and because, even if

25  she had, Defendant "unequivocally does not disclose video viewing information to

26  Meta" (because its "deployment of the Pixel on the Website did not collect" such

27  information in the first place). (ECF No. 14 at 12).  These arguments fail because they

28  present questions of fact that are "intertwined with an element of the merits of the

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

plaintiff's claim," which are not susceptible to resolution on a motion to dismiss. *See Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024). Defendant concedes as much on page 8 of the Motion. (ECF No. 10 at 8 ("First, Turner fails to plead Article III injury-in-fact because **she does not plead a plausible VPPA claim**.")) (emphasis added). At this stage of the litigation, the factual allegations of the Complaint must be accepted as true on the question of whether Defendant disclosed Plaintiff's VPPA-protected information to a third party.

And in the Complaint, Plaintiff specifically alleges that "when a consumer **requests or obtains** a particular prerecorded video on Defendant's Website, **the Meta Pixel** technology that Defendant intentionally installed on its Website **transmits** (1) the **unencrypted FID** for each purchaser; (2) detailed information revealing the **titles and subject matter of the prerecorded videos requested or obtained** by each of its purchasers; and (3) the **URL where such videos are available for purchase**, without the consumer's consent and in clear violation of the VPPA." (*See* ECF No. 1, ¶ 41) (emphasis added). Before being retained by Plaintiff Turner and filing this Action, Defendant's use of the Meta Pixel on its website, www.nationalnotary.org, was investigated. *See* Jackson Decl., ¶ 2. Contrary to the assertions in the Motion, the investigation revealed that when the "Order Now" button is clicked by consumers of Defendant's website, Defendant's configuration of the Meta Pixel sends a "Subscribed Button" event code to Meta. *See* Jackson Decl., ¶ 5. That "Subscribed Button" event code is sent alongside, the title of the prerecorded video course, the URL, and a consumer's FID. A true and accurate copy of that transmission is reproduced here:

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11



12  Additionally, Defendant argues that Plaintiff "lacks an Article III injury-in-fact"

13  because she has no privacy interest in her purchase of prerecorded video materials from

14  Defendant's website because she "operates and promotes a public notary business,"

15  and "[h]er Facebook Page and LinkedIn Profile are both public and tout her affiliation

16  with the NNA and specifically her completion of the NNA Certification course[.]"

17  (ECF No. 14 at 11-12).  In support of its assertion that Plaintiff "voluntarily disclosed

18  to Meta the exact information she alleges is 'private' video information (her NNA

19  Certification course)," Defendant cites a declaration from its chief financial officer,

20  Robert Clarke, purporting to establish that Plaintiff "voluntarily discloses that she had

21  completed the Certification course to Meta by publishing it on her Facebook profile."

22  (ECF No. 14 at 11; ECF No. 14-1, ¶ 40).  That is preposterous.  Defendant has

23  submitted no evidence showing that Plaintiff ever "voluntarily disclosed" to anyone

24  that she requested or obtained a particular prerecorded video sold on Defendant's

25  website.  Neither the Motion nor Mr. Clark's declaration establishes anything of the

26  sort.  At most, Mr. Clarke's declaration establishes that Plaintiff identified herself on

27  Facebook as being a loan signing agent – a far cry from identifying herself as a person

28  who purchased specific prerecorded video materials from Defendant.  Nor is any

9

disclosure by Plaintiff of the fact that she satisfied California Government Code § 8201's requirements (to be a notary public or loan signing agent in the State of California) synonymous with Plaintiff having disclosed that she purchased specific prerecorded video materials from Defendant.  Although California Government Code § 8201 requires Plaintiff to "satisfactorily complete[] a six-hour course of study approved by the Secretary of State," there are obviously numerous ways for her to satisfy this requirement, including by attending in-person or online courses by any number of providers, among many other methods.  *See id*.  Thus, a disclosure of a person's compliance with California Government Code § 8201 is obviously not the same thing as a disclosure of the person's purchase of a specific prerecorded video from a specific company.  The latter, not the former, is what the VPPA governs and is what Plaintiff seeks to redress in this case.

As supposed support for the ill-founded idea that Plaintiff's claim arises from Defendant's disclosure of something that Plaintiff had already made public, Defendant cites several readily distinguishable decisions where plaintiffs were found to lack Article III standing to bring VPPA claims that arose from a defendant's disclosure of information revealing that the plaintiff had purchased a ticket to view a movie at a public theater.  *See, e.g., Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921 (C.D. Cal. 2023).  But this case concerns Plaintiff's purchases of prerecorded video materials that she watched privately, not publicly.  And, Defendant has submitted no evidence showing that Plaintiff ever publicly disclosed the fact that she purchased or watched any of the prerecorded video materials sold on the www.nationalnotary.org website.[2]

---

[2] The Motion cites *Heldt v. Guardian Life Ins. Co. of Am.*, 16-CV-885-BAS-NLS, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) (CA state law invasion of privacy claim for disclosure of medical information), *Davidson v. Hewlett-Packard Co.*, 5:16-CV-01928-EJD, 2021 WL 4222130, at *6 (N.D. Cal. Sept. 16, 2021), *United States v.*

10

1    As a final note, the Motion inconsistently claims that Plaintiff's job title waives

2    her VPPA-right to privacy in that course and later claims that Defendant is not a

3    videotape service provider.  Defendant cannot have it both ways.  The Motion should

4    be denied.

5    **B. Plaintiff has Sufficiently Pled Her VPPA Claim.**

6    Second, the factual allegations of the Complaint adequately establish that

7    Defendant is a videotape service provider because it is the operator of a business that

8    sells prerecorded videos to consumers nationwide, that Defendant installed the Meta

9    Pixel technology on its website to enhance its marketing capabilities, that Defendant

10   knowingly transmitted Plaintiff's purchase-related information to Meta via that

11   technology, and that Plaintiff's FID is capable of specifically identifying her by name

12   — and as a result has stated a claim.

13   A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the

14   defendant is a "video tape service provider," (2) the defendant disclosed "personally

15   identifiable information concerning any customer" to "any person," (3) the disclosure

16   was made knowingly, and (4) the disclosure was not authorized by the statutory

17   exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).  Plaintiff has

18

19

20   *Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012), and *Cook v. GameStop, Inc.*,
     689 F. Supp. 3d 58, 63 (W.D. Pa. 2023).  In *Heldt* and *Davidson*, the respective
21   plaintiffs brought state law invasion of privacy claims based on disclosures of medical
     records, but Heldt listed the specific condition he was suffering from on Facebook, and
22   Davidson's family created an online blog mentioning his specific condition. Both of
23   these decisions are inapposite because, in this case, Defendant has submitted no
     evidence that Plaintiff ever publicly disclosed that she purchased any particular
24   prerecorded video from Defendant. Defendant's citation to *Cook* is also misplaced
25   because *Cook* concerned a plaintiff alleging a claim for violation of a wiretap statute,
     arising from disclosures of mouse clicks and other information that could not even
26   identify the plaintiff.  Plaintiff in this case specifically alleges facts showing that the
27   information Defendant disclosed to Meta personally identified her.
28

clearly and sufficiently alleged all four elements here.  Because Defendant challenges only the first three elements, Plaintiff will address those arguments below.[3]

### i. *Defendant is a Videotape Service Provider*

The VPPA defines "videotape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]"  18 U.S.C. § 2710(a)(4).  Judge Staton from this Court previously used a two-part test to determine whether this element was satisfied, which required that the plaintiff allege facts supporting the inference that (1) the defendant is "in the business of delivering video content" and (2) the defendant's product is not only "substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose."  *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).  Plaintiff's allegations are sufficient under the VPPA or Judge Staton's test.

The Complaint alleges that "Defendant sells various prerecorded video materials on its website, www.nationalnotary.org, including online courses and certification programs on various topics, including becoming a licensed notary or signing agent." (*See* ECF No. 1, ¶ 58).  Far from incidental placement of videos for marketing, the Complaint specifically alleges that Defendant's website operates as an online video storefront permitting customers to purchase video courses.  To initiate a purchase, first

---

[3] Defendant argues the Court should take judicial notice of Plaintiff's social media pages.  This Court should not because this extrinsic material is neither referenced by the Complaint nor is it central to the claims.  Plaintiff's job title—the only reason Defendant seeks judicial notice—does not reveal how she satisfied the requirements of California law, *i.e.*, by video course, written course, live course, etc. Nor does it bear on the allegations within the Complaint.  Finally, consent is an affirmative defense that requires a specific showing that is not present even on Plaintiff's social media pages— and which is inappropriate for resolution on a motion to dismiss.  *See Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1023 (D. Minn. 2023).

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

"a consumer requests or obtains a particular prerecorded video on Defendant's Website, the Meta Pixel technology that Defendant intentionally installed on its Website [then] transmits (1) the unencrypted FID for each purchaser; (2) detailed information revealing the titles and subject matter of the prerecorded videos requested or obtained by each of its purchasers; and (3) the URL where such videos are available for purchase." (*See id.*, ¶¶ 41, 60). Next, "a person must provide at least his or her name, email address, billing address, and credit or debit card (or other form of payment) information." (*See id.*, ¶ 59). The Complaint further corroborates Defendant's active involvement in this process by alleging that Plaintiff personally purchased prerecorded video material in August 2024 and that "Defendant completed the sale[]" of that prerecorded video material "to Plaintiff by shipping or delivering the prerecorded video material she purchased to the address she provided in her order." (*See id.*, ¶ 9).

These allegations are on par with *In Re Vizio* because the Complaint alleges that Defendant's www.nationalnotary.org website is intimately involved in the **sale** of video content to consumers like the Vizio Smart TVs, both of which "created a supporting ecosystem to seamlessly deliver video content to consumers." *See* 238 F. Supp. 3d at 1222; 18 U.S.C. 2710(a)(4) ("'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of **rental, sale, or delivery** of prerecorded video cassette tapes or similar audio visual materials") (emphasis added). This conclusion is supported by the decisions of other California federal courts that have addressed the issue. *See Stark v. Patreon, Inc.*, 635 F.Supp.3d 841, 852 (N.D. Cal. 2022) (videotape service provider element satisfied as to prerecorded materials because "it is reasonable to think that developing a website to deliver video content requires more significant "tailor[ing] to serve that purpose" than a package delivery service shipping videocassettes along with other physical goods.") ["*Stark I*"]; *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095-DMS-VET, 2024 WL

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

5161955, at *3 (S.D. Cal. Dec. 18, 2024) (videotape service provider element satisfied).

Defendant argues that it is not a "videotape service provider" for two reasons. First, the Motion claims Plaintiff "does not allege any facts demonstrating that the NNA is [primarily][sic] 'engaged in the business' of selling covered are 'prerecorded video cassette' or 'similar audio-visual materials.'" (ECF No. 14 at 16). Second, the Motion claims that Plaintiff "fails to adequately allege that the online educational programs offered by the NNA are covered video materials." (*See id.* at 17). Defendant also relies on cases, principally *Rodriguez v. JD Boden Servs., Inc.*, 2024 WL 559228, at *4 (S.D. Cal. Feb. 12, 2024), that are patently distinguishable because each of the cases cited dealt with "delivery" of videos as the term is used in 18 U.S.C. § 2710(a)(4) on websites that did not engage in the "sale" of videos. Additionally, those defendants only used videos to market their products. That is not the case for Defendant.

Defendant's arguments have no merit because Defendant is simply attempting to steer this Court far beyond the well-pled allegations in the Complaint by citing extrinsic material such as the Clarke Declaration. The Complaint plainly alleges that Defendant directly sells prerecorded video courses as alleged in the Complaint. (ECF No. 1, ¶ 58). Even the Motion confirms this fact, which renders each case involving incidental marketing videos plainly inapplicable. (ECF No. 14 at 4) ("As part of its larger training and education programming, the NNA offers online education courses for purchase."). Thus, Defendant's suggestion that offering a "single" video cannot establish liability fails because Defendant does far more than that. And, even if this Court considered the Clarke declaration, which it should not, it establishes that Defendant is actively engaged in the sale of videos and that these sales contribute to nearly 10% of its annual revenue. In 2008, that annual revenue was $30 million, so using that year as a reference, at least $3 million would be attributed to prerecorded video sales. *See, e.g.*, *National Notary Association Corp. v. National Equity Settlement Services, Inc.*, No. 2:08-cv-01639, ECF No. 13, Memorandum in Support of Motion

for Prelim. Injun. (D. Ariz).  Under either test, Plaintiff has established that Defendant
is engaged in the business of selling prerecorded videos.  Thus, the Motion should be
denied.

### ii.  Defendant Made a Knowing Disclosure Under the VPPA

Liability under the VPPA attaches when a "videotape service provider" like
Defendant, "knowingly discloses . . . personally identifiable information concerning
any consumer of such provider[.]"  *See* 18 U.S.C. § 2710 (b)(1).

Plaintiff has sufficiently alleged a knowing disclosure of protected information.
The Complaint specifically alleges that:

> Defendant knowingly disclosed Plaintiff's and Class members' Private Video
> Information to Meta via the Meta Pixel technology because Defendant
> intentionally installed and programmed the Meta Pixel code on its Website,
> **knowing that such code would transmit the prerecorded video material
> requested or obtained by their consumers and the consumers' unique
> identifiers** (including FIDs).

(*See* ECF No. 1, ¶ 79 (emphasis added)).  The Complaint further alleges Defendant's
knowledge based on its (1) "intentional install[ation]" of the Meta Pixel, (*id.* at ¶¶ 41,
61); (2) "intentionally program[ing]" if the Meta Pixel "**so that all of its customers'
Private Video Information is disclosed to Meta**." (*See id.*, ¶ 65 (emphasis added));
and (3) knowingly choosing to "configured the Meta Pixel on its Website to send Event
Data to Meta" when other configurations existed.  (*See id.*, ¶ 52).  Any one of these
well-pled allegations, standing alone, would be sufficient to allege Defendant's
knowing disclosure of personally identifiable information.  *See Ghanaat v. Numerade
Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) (knowledge sufficiently alleged
when plaintiff alleged that "defendant knowingly installed the Meta Pixel knowing that
it transmits the alleged P[I]I.").  Decisions from courts across the nation are in accord.
*See id.* (collecting cases); *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL
7280519, at *4 (E.D. La. Nov. 3, 2023); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d
1335, 1340 n.2 (N.D. Ga. 2022) (same); *Czarnionka v. Epoch Times Ass'n, Inc.*, No.

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) ("Knowledge of what Facebook might do with the disclosed information to yield PII is therefore unnecessary."); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1337 (N.D. Ga. 2023) (precise knowledge is not required under the statute). Defendant cites not a single case to the contrary.  The Motion should be denied.

The Motion also challenges whether a disclosure was made and whether the information disclosed was publicly available, but these arguments fail for the reasons explained above.  First, Plaintiff's job title does not reflect that she requested, obtained, or purchased prerecorded video material from Defendant.   Second, Defendant disclosed to Meta "when a consumer **requests or obtains** a particular prerecorded video on Defendant's Website, **the Meta Pixel** technology that Defendant intentionally installed on its Website **transmits** (1) the **unencrypted FID** for each purchaser; (2) detailed information revealing the **titles and subject matter of the prerecorded videos requested or obtained** by each of its purchasers; and (3) the **URL where such videos are available for purchase**, without the consumer's consent and in clear violation of the VPPA."  (*See* ECF No. 1, ¶ 41) (emphasis added).  The same is confirmed by the Jackson Declaration.  *See* Jackson Decl., ¶ 5.  Therefore, the disclosure arguments from pages 18-21 of the Motion fail, and the Motion should be denied.

### iii.  An FID is Personally Identifiable Information.

The VPPA defines "personally identifiable information" as including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  *See* 18 U.S.C. § 2710 (a)(3). The Ninth Circuit offered a limited clarification to the definition of "personally identifiable information" as it relates to the context of video streaming by finding that,

in addition to disclosing the videos streamed, a VPPA plaintiff must also allege the information "*can be used* to identify an individual" who streamed the videos. *See Eichenberger*, 876 F.3d at 986. After *Eichenberger*, Judge Aenlle-Rocha from this Court observed that "[m]ost courts have found the [Meta] Pixel discloses PII at the pleading stage, at least where plaintiffs also allege personal information existed on their Facebook page that could be used to readily identify them." *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024) (collecting cases). Plaintiff has satisfied this pleading threshold.

The Complaint alleges an FID is personally identifiable information because it begins by alleging that "A Meta profile . . . identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person)." (*See* ECF No. 1, ¶ 3). It further alleges that an FID "identifies a person more precisely than a name, as numerous persons may share the same name, but each person's Facebook profile (and associated FID) uniquely identifies one and only one person." (*See id*.). The Complaint also alleges that any person can use an FID to identify a person "by accessing the URL www.facebook.com/ and inserting the person's FID" (*See id*., ¶¶ 3, 62). Next, the Complaint ties the personally identifying nature of an FID to specific allegations of the Plaintiff's own experience by alleging that "when requesting or obtaining prerecorded video material from Defendant's website, Plaintiff had a Meta account, a Meta profile displaying her name and picture, and an FID associated with such profile." (*See id*., ¶ 10). These well-pled allegations must be accepted as true and mirror the allegations found sufficient by courts in this Circuit. *See Sellers*, 2023 WL 4850180, at *4 ("The FID is a unique identifier that is enough, on its own, to identify a person."); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) ("[T]he Court may reasonably infer that an ordinary person could readily identify a specific Facebook user on the basis of a Facebook Profile ID.").

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    Defendant's reliance on *Nickelodeon* and *Edwards v. Learfield Commc'ns, LLC*,

2    697 F. Supp. 3d 1297, 1308 (N.D. Fl. 2023) is misplaced.  *Nickelodeon* did not involve

3    the Meta Pixel or an FID, which renders Defendant's entire discussion plainly

4    inapplicable to the case before this Court.  The relevant discussion from *Nickelodeon*

5    actually supports a finding that the FID is personally identifiable information because

6    the Third Circuit suggested that "[s]ome disclosures predicated on new technology,

7    such as the dissemination of precise GPS coordinates or customer ID numbers, may

8    suffice."  *See* 827 F.3d at 290.  The citation to *Edwards* suffers a similar fate because

9    that case involved pleading deficiencies that are not present in the case before this

10   Court.  Thus, Defendant's Motion should be denied.

11       **C. The VPPA is Constitutional**

12       Third, the VPPA is constitutional. Since the VPPA was enacted over two and

13   half decades ago, no court has found that it violates the First Amendment despite

14   numerous challenges to that effect.  That is because the VPPA regulates commercial

15   speech, furthers privacy interests that have long been recognized as important in

16   American jurisprudence, and does so through means substantially related to those

17   interests.  Indeed, the VPPA *protects* First Amendment interests, as Congress expressly

18   recognized when adopting the legislation.  *See, e.g.*, S. Rep. 100–599 at 4 (1988)

19   ("Protecting an individual's choice of books and films is a second pillar of intellectual

20   freedom under the first amendment.").

21       Federal district courts are in accord that the VPPA does not violate the First

22   Amendment.  In *Saunders v. Hearst Television, Inc.*, for example, the court expressly

23   rejected a First Amendment challenge to the VPPA.  711 F. Supp. 3d 24, 33 (D. Mass.

24   2024).   The court found that the complaint's alleged disclosures of personally

25   identifiable information constituted commercial speech and was therefore subject to

26   intermediate scrutiny.  *Id*.  Drawing on legislative history, the court wrote that

27   "Congress's interest in enacting the VPPA was to 'preserve personal privacy with

28   respect to the rental, purchase or delivery of video tapes or similar audio visual

18

materials.'" *Id*. (quoting S. Rep. 100-599 at 1). It determined that these privacy interests are important within the intermediate scrutiny framework given that the "Supreme Court has repeatedly recognized the sanctity of personal privacy." *Id*. (citing *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995); *Frisby v. Schultz*, 487 U.S. 474, 483-485 (1988)). Next, the court found that the VPPA's restriction on the "precise videos that plaintiffs viewed alongside plaintiffs' PII directly and materially advances that interest." *Id*. Completing the analysis, the Court held that the "VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers" and that the "'fit' between Congress's goal of protecting privacy in this realm and its means to do so is at least reasonable." *Id*. (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 481 (1989)). For these reasons, the court found the VPPA constitutional. *Id*.

Similarly, in *Stark II*, the court rejected the defendant's First Amendment argument. 656 F. Supp. 3d 1018, 1039 (N.D. Cal. 2023). It found that the disclosures alleged by the plaintiffs concerning disclosures to Meta via the Meta Pixel constituted commercial speech. *See id*. at 1033-34 ("There is no indication that either party to this transfer of information had any non-economic motivation. . . . this Court is satisfied that Patreon's alleged speech at issue is commercial—as is most similar speech governed by the VPPA in the context of corporate data collection and analysis."). The Court concluded that "the statute's regulation of commercial disclosures similar to those at issue in this case do not support Patreon's contention that the VPPA violates the First Amendment." *Id*. at 1031.[4] Several authorities have also taken the position

---

[4] The *Stark II* court also considered defendant's "facial," as opposed to "as-applied," challenge to the VPPA based upon noncommercial speech by entities other than the defendant, but found the facial challenge premature at the motion to dismiss stage. *See Stark II*, 656 F. Supp. 3d at 1039. Defendant makes no mention of potential noncommercial applications of the VPPA, nor does it give any indication that Defendant intends to present anything other than a challenge to the statute "as-applied" to the facts alleged in the Complaint. (*See* ECF No. 14 at 22-25).

that the VPPA is constitutional in other contexts.[5]  The unanimous opinion of federal courts is that the VPPA does not violate the First Amendment.

Despite this clear guidance, Defendant argues the VPPA is unconstitutional for two reasons.  Defendant argues the VPPA violates the due process clause of the Fifth Amendment to the U.S. Constitution based on allegedly "vague references" in the definition of "videotape service provider" that "arbitrarily and discriminatorily" subject corporations "to class action lawsuits and potentially could face multi-million-dollar statutory damages and reputational injury based on their otherwise legal marketing practices." (ECF No. 14 at 22-23).  Defendant also argues the VPPA violates the First Amendment because there is not a substantial interest and it is not narrowly tailored to that interest.  (*See id.* at 23-25).  Defendant's arguments are meritless for several reasons.

First, for a statute to be void for vagueness in violation of the Fifth Amendment the party claiming invalidity has to demonstrate the VPPA either  "does not define the conduct it prohibits so that an ordinary person would not know what is required of him" or "encourages arbitrary and discriminatory enforcement."  *See Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1440 (9th Cir. 1996). Defendant has failed to and cannot meet its burden.  Defendant's argument to the contrary is belied

---

[5] *See Boehner v. McDermott*, 484 F.3d 573, 578 n.2 (D.C. Cir. 2007) ("The government can also limit disclosures by persons who are not its employees without running afoul of the First Amendment"); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1124 (9th Cir. 2020) (citing the VPPA as an example of the "many state and federal statutes [that] 'regulate data collection and disclosure' without implicating the First Amendment . . . ."). Additionally, courts examining analogous statutes have held those statutes are constitutional.  *See, e.g., Boelter v. Hearst Commc'ns, Inc.* ("*Hearst I*"), 192 F. Supp. 3d 427, 445 (S.D.N.Y. 2016) (holding Michigan Preservation of Personal Privacy Act (the "MPPPA"), Mich. Compl. Laws § 445.1711, is constitutional); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016) (same); *Boelter v. Hearst Commc'ns, Inc.* ("*Hearst II*"), 269 F. Supp. 3d 172, 197–98 (S.D.N.Y. 2017) (same).

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

by Ninth Circuit precedent clearly setting forth that "although some reasonable debate may ensue, due process recognizes that some exercise of discretion is inevitable." *See id.* (finding no Fifth Amendment violation because "the Regulations' initial failure to define "educational activities" is not fatally vague" because "[t]wo different people can look at an applicant's itinerary and arrive at the same conclusion as to whether it involves educational activities[.]").  The same discretion is necessitated here and demonstrates that any ordinary person or corporation can read the VPPA to see that if they are engaged in the "rental, sale, or delivery" of prerecorded cassette tapes or similar audiovisual materials, they must comply with the federal Act.  Defendant has failed to cite any instance of arbitrary or discriminatory enforcement, though that situation largely applies to government actors.  This explains why Defendant has offered no case finding that the VPPA violates the Fifth Amendment.  For good reason, because it does not.  The Motion should be denied on this basis.

Second, the VPPA plainly survives First Amendment scrutiny.  This Court should adopt the reasoning from *Stark II* and *Saunders v. Hearst Television, Inc.*, which concluded the VPPA is constitutional.[6]  Contrary to the Motion's suggestion otherwise, a consumer's right to privacy is a substantial government interest.  *See e.g., Stanley v. Georgia,* 394 U.S. 557, 564–565 (1969) (recognizing the "the right to read or observe what [one] pleases—the right to satisfy [one's] intellectual and emotional needs in the privacy of [one's] own home"); *Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 818 (D.C. Cir. 2001) (expressing "no doubt" that the state's interest in protecting "the consumer's right to privacy . . . is substantial").  This is the exact interest that Congress intended

---

[6] The United States intervened in these actions and several others.  Plaintiff submits the United States' memorandum of law from three cases, as an exhibit to this response and incorporates by reference any arguments made therein.  *See* Exhibit A (*Walsh v. California Cinema Invs. LLC*, No. 2:23-CV-09608-ODW (AJRX) (C.D. Cal.)); Exhibit B (*Peterson v. Learfield Commc'ns, LLC*, No. 8:23-cv-00146 (D. Neb.)); Exhibit C (*Myers et al., v. Nat'l Assoc. Stock Car Auto Racing, Inc.*, No. 3:23-cv-00888 (W.D. NC)).

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

to protect in adopting the VPPA.  *See* S. Rep. 100–599, at *5 (noting Senator Leahy's remarks that "[i]t is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home."). To the extent that Defendant claims that the VPPA's restrictions are not part of a long tradition of proscription, the Senate Report forecloses that argument.  *See id.*, at *2 ("The Video Privacy Protection Act follows a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals. In each instance, Congress has expanded and given meaning to the right of privacy.").    Defendant fails to demonstrate the VPPA does not articulate a substantial interest.  The Motion should be denied.

Third, the VPPA is narrowly drawn.  This careful tailoring neither requires the law to be "least restrictive means" nor the "single best disposition." *Fla. Bar*, 515 U.S. at 632.  Rather, the statute must only represent a "reasonable" means of accomplishing the government's goal, and its scope must be "in proportion to the interests served." *Fox*, 492 U.S. at 480.  Such is the case here, where the law limits the dissemination of only the type of information about which the government is concerned, and narrowly targets those likely to possess that information.  *See Hearst I*, 192 F. Supp. 3d at 449. Only disclosures of "personally identifiable information" are prohibited, and that term is narrowly defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  Only "video tape service provider[s]" are subject to liability, who are defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ." 18 U.S.C. § 2710(a)(4).  Finally, only "consumer[s]" have standing to sue, and they are defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  These limitations indicate that the VPPA is narrowly drawn.  *See, e.g.*, *Saunders*, 711 F. Supp.

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  3d at 33 ("the VPPA is narrowly drawn because it applies only to a narrow group of

2  business entities and specific group of consumers.").

3      Defendant ignores these authorities and instead argues that the informed consent

4  provisions of the VPPA demonstrate that the Act is not narrowly tailored. Specifically,

5  Defendant argues "The consent requirements in § 2710(b)(2)(B)(i)-(iii) fail these

6  standards" because "[t]he purported privacy interest ends once "informed, written

7  consent" is obtained." (ECF No. 14 at 24). This is nonsense. Indeed, earlier in its

8  Motion, Defendant argues the Restatement of Torts has long recognized that the right

9  to privacy can be waived. (*See id.* at 11-12). Then, at the end of the Motion, it argues

10 that waiver through consent violates the First Amendment. Defendant cannot have it

11 both ways. This argument fails because the informed consent provision demonstrates

12 the VPPA is narrowly tailored because it allows consumers to make choices about their

13 own information. Thus, given the interests at stake, the VPPA is sufficiently narrowly

14 tailored. *Accord Hearst I*, 192 F. Supp. 3d at 451.

15     Rather than infringe upon the First Amendment, Congress understood that the

16 VPPA would protect the interests and values that the First Amendment embodies. *See*

17 S. Rep. 100-599, at 4 ("If the First Amendment means anything, it means that a State

18 has no business telling a man, sitting alone in his house, what books he may read or

19 what films he may watch.") (quoting *Stanley v. Georgia*, 394 U.S. 557 (1969)); *id*. at

20 6 ("This bill will give specific meaning to the right of privacy, as it affects individuals

21 in their daily lives.") (Sen. Grassley). Indeed, striking down the VPPA would endanger

22 a wide range of privacy interests protected by similar laws across the United States.[7]

23

24 [7] *See e.g.*, Am. Library Ass'n, State Privacy Laws Regarding Library Records,

25 ALA.org,
   https://www.ala.org/advocacy/privacy/statelaws#:~:text=Forty%2Deight%20states%

26 20and%20the,vary%20from%20state%20to%20state ("Forty-eight states and the

27 District of Columbia have laws protecting the confidentiality of library records . . . .");
   Hayley Tsukayama, Electronic Frontier Foundation, "Texas is Enforcing Its State Data

28 Privacy Law. So Should Other States" (Jan. 22, 2025) (noting "the Texas Attorney

PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

This Court should find that the VPPA withstands First Amendment scrutiny because it is narrowly tailored to directly and materially advance a substantial interest in personal privacy.

## V.    <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety.   In the event that the Court grants the Motion, Plaintiff requests leave to amend.

Dated:  April 11, 2025                     Respectfully submitted,

By: /s/ *Frank S. Hedin*          .

FRANK S. HEDIN (SBN 291289)
**HEDIN LLP**
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone:  (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:       fhedin@hedinllp.com


*Counsel for Plaintiff and Putative Class*

---

General's Office has filed its first lawsuit under Texas Data Privacy and Security Act (TDPSA) to take the Allstate Corporation to task for sharing driver location and other driving data without telling customers."); Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d–2; 45 CFR pts. 160 and 164 (2010) (protecting personal health information).

**<u>REBUTTAL INDEX OF HEDIN LLP CASES</u>**

1.     *Cochenour v. 360Training.com, Inc.*, No. 1:25-CV-00007 (W.D. Tex. Jan. 2, 2025) – ECF No. 1 (mortgage loan education company alleged to have violated the VPPA through **"sale" and "delivery"** of prerecorded videos from the www.mortgageeducators.com website because "the Meta Pixel to disclose[d] to Meta the unencrypted FID of the person who made the purchase and the specific title of video material that the person purchased, as well as the URL where such video material is available for purchase").

2.     *Michael Archer v. NBC Universal Media LLC et al*, No. 2:24-CV-10744 (C.D. Cal. Dec. 13, 2024) – ECF No. 19 (multimedia company alleged to have violated the VPPA because it used the Meta Pixel on the www.gruv.com website to disclose "each Facebook-enrolled customer's Facebook ID ("FID"), along with the specific title(s) of the prerecorded video(s) that each of them **requested for purchase**" by clicking the add to cart button "on Defendants' website.").

3.     *Damrau et al. v. Colibri Group, Inc.*, No. 4:24-CV-01441 (E.D. Mo. Oct. 25, 2024) – ECF No. 15 (professional education company alleged to have violated the VPPA by disclosing "its customers' personally identifying video viewing information to third parties, such as **Meta Platforms, Inc. ("Meta") and TikTok Inc. ("Tiktok")**).

4.     *Kueppers et al v. Zumba Fitness, LLC*, 0:24-CV-61983 (S.D. Fla. Oct. 23, 2024)  - ECF No. 1 (fitness platform alleged to have violated the VPPA by disclosing "personally identifying video viewing information" such as the titles of "**(1) on-demand Zumba instructor training courses and (2) workout classes** hosted by Zumba instructors" to: (i) Meta Platforms, Inc. ("Meta"), formerly known as **Facebook, Inc. ("Facebook") and (ii) Pinterest, Inc. ("Pinterest")**").

5.     *Guereca v. Motorsport.tv Digital, LLC*, No. 1:24-CV-24066 (S.D. Fla. Oct. 21, 2024) – ECF No. 1 (global streaming platform alleged to have violated the VPPA by disclosing "its customers' personally identifying **subscription and video viewing information to Meta**").

6.     *Lovett v. Continued.com, LLC*, No. 1:24-CV-00590 (S.D. Ohio Oct. 16, 2024) – ECF No. 1 (education company alleged to have violated the VPPA by disclosing "customer's Facebook ID ("FID") and **the subscription** that each of its customers purchased on its Website" via the Meta Pixel).

7.     *Manza v. Pesi, Inc.*, No. 3:24-CV-00690 (W.D. Wis. Oct. 3, 2024) – ECF No. 13 (non profit company alleged to have violated the VPPA by **selling mailing lists** containing personal video purchase information concerning seminars attended **and**

**disclosing online course purchase information to Meta** through the Meta Pixel, **Pinterest through the Pinterest Tag, and Google through Google Analytics and AdSense**).

8.     *Jordan v. Crunch, LLC*, No. 1:24-CV-07118 (S.D. N.Y. Sept. 19, 2024) – ECF No. 5 (fitness company alleged to violated the VPPA by disclosing **specific video subscription** purchased on the www.crunchplus.com website to Meta).

9.     *Comarow v. TRTCLE, Corp.*, No. 1:24-CV-07096 (S.D. N.Y. Sept. 18, 2024) – ECF No. 1 (legal continuing education provider alleged to have violated the VPPA by disclosing "customers' identities, their **subscription purchases, and the titles of the prerecorded video materials** that they obtained to Meta Platforms, Inc.").

10.     *Carruth v. KD Creatives, Inc.*, No. 2:24-CV-02484 (E.D. Cal. Sept. 12, 2024) – ECF No. 1 (education company geared toward educating parents on toddler care alleged to have violated the VPPA by disclosing the **video courses purchased to Meta**).

11.     *Harlos v. LexVid Services, Inc.*, No. 3:24-CV-01621 (S.D. Cal. Sept. 11, 2024) – ECF No. 1 (legal continuing education provider alleged to have violated the VPPA by disclosing "customers' identities, their **subscription purchases, and the titles of the prerecorded video materials** that they obtained to Meta Platforms, Inc.").

12.     *Harper v. NBI, Inc.*, No. 3:24-CV-00644 (W.D. Wis. Sept. 11, 2024) – ECF No. 11 (non profit company alleged to have violated the VPPA by disclosing "customers' identities, their **subscription purchases, and the titles of the prerecorded video materials** that they obtained to Meta Platforms, Inc.").

13.     *Ezpeleta v. FurtherEd, Inc.*, No. 1:24-CV-06709 (S.D. N.Y. Sept. 4, 2024) – consolidated sub. nom. *Jolly v. FurtherEd, Inc.*, No. 1:24-cv-06401-LJL (legal continuing education provider alleged to have violated the VPPA by disclosing the s**pecific title of prerecorded videos purchased by consumers to Meta**).

14.     *Stachovic v. Pig Newton Inc.*, No. 1:24-CV-06589 (S.D. N.Y. Sept. 3, 2024) – ECF No. 1 (digital platform alleged to have violated the VPPA by disclosing **when consumers click the "add to cart" to request prerecorded videos** on the www.louisck.com website).

15.     *Michael Archer et al v. Shout! Factory LLC*, No. 2:24-CV-07056 (C.D. Cal. Aug. 20, 2024) – consolidated sub. nom. *Welbel et al. v. Shout! Factory LLC*, No. 1:24-cv-06426 (N.D. Ill.), ECF No. 20 (multimedia company alleged to have violated the VPPA by having "systematically collected and shared the personal information of

consumers on its website through **the use of code that includes cookies and the 'Facebook Pixel.'"**).

16.    *Golland et al v. Major League Baseball Advanced Media, L.P.*, No. 1:24-CV06270 (S.D. N.Y. Aug. 20, 2024) – ECF No. 34 (professional baseball association alleged to have violated the VPPA by disclosing **subscription purchases that provided access to the MLB.com website and MLB.tv streaming service to Meta and Snapchat**.).

17.    *Silva v. Yanka Industries, Inc.*, No. 3:24-CV-05264 (N.D. Cal. Aug. 16, 2024) – ECF No. 28 (multimedia company alleged to have violated the VPPA by **disclosing video subscriptions purchased on the www.masterclass.com website to Meta and Google**).

18.    *Macalpine et al v. Onnit, Inc.*, No. 1:24-CV-00933 (W.D. Tex. Aug. 15, 2024) – ECF No. 12 (fitness company alleged to violated the VPPA by disclosing specific titles of prerecorded videos purchased on the www.onnit.com website to Meta).

19.    *Feller et al v. Alliance Entertainment, LLC et al*, No. 0:24-CV-61444 (S.D. Fla. Aug. 8, 2024) (multimedia company alleged to have violated the VPPA by **selling mailing lists containing customers protected information and using the Meta Pixel to disclose the same**).

20.    *Brown et al v. WalMart, Inc.*, No. 5:24-CV-05144 (W.D. Ark. Jul. 15, 2024) – ECF No. 1 (massive retailer alleged to have violated the VPPA by disclosing the **prerecorded video materials (DVDs, etc.) purchased** from the www.walmart.com website).