UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge |
|---|---|

| Vanessa Figueroa | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorney Present for Plaintiff: | Attorney Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order Re: Pending Motion [14]**

Having reviewed and considered all the briefing filed with respect to National Notary Association's ("NNA" or "defendant") Rule 12 Motion to Dismiss (Dkt. 14, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**PLAINTIFF'S ALLEGATIONS**[1]

On January 13, 2025, Teresa Turner ("Turner" or "plaintiff") filed this putative class action against defendant asserting a single claim for violation of the Video Privacy Protection Act ("VPPA" or "Act"), 18 U.S.C. § 2710. (See Dkt. 1, Complaint at ¶¶ 74-82). Defendant, a "not-for-profit" corporation, is the largest and oldest organization in the United States serving notaries and providing training to persons to become notaries through "seminars, conferences, and printed and online educational materials that accompany [the] programs." (Id. at ¶ 14). It "sells various prerecorded video materials on its website, www.nationalnotary.org, including online courses and certification programs[.]" (See id. at ¶ 58). To purchase prerecorded material, a person must provide at least his or her last name, email address, billing address, and payment information. (Id. at ¶ 59).

Plaintiff is a "consumer of video products and services offered on defendant's www.nationalnotary.org website." (Dkt. 1, Complaint at ¶ 9). In August 2024, she purchased prerecorded video material from the website by "requesting and paying for such material, providing her name, email address, and home address for delivery of such material." (Id.).

Plaintiff alleges that defendant has, without consent or notice, "systematically transmitted" its customers' personally identifying video viewing information to third parties, such as Meta Platforms, Inc. ("Meta"), using "Meta Pixel," which defendant installed on its website. (See Dkt.

---

[1] Capitalization, quotation and alteration marks, emphasis and formatting in record citations may be altered without notation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

1, Complaint at ¶ 2). The information defendant discloses to Meta includes the customer's Facebook ID ("FID"), which is linked to a specific Meta profile/person, and the "specific title of a prerecorded video" purchased by the customer. (See id. at ¶ 3). Based on such conduct, plaintiff alleges that defendant has violated the VPPA. (See id. at ¶¶ 5, 74-82). Plaintiff seeks to represent a class of all persons in the United States who purchased prerecorded material or services from defendant's website while maintaining an account with Meta/Facebook. (See id. at ¶ 68).

Defendant now moves to dismiss the Complaint for lack of Article III standing under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). (See Dkt. 14, Motion at 6-22). Defendant also contends that the VPPA is unconstitutional. (See id. at 22-25).

**LEGAL STANDARDS**

I.      RULE 12(b)(1).

A defendant may seek to dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2] "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)[.]" Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039.

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039. "The court need not presume the truthfulness of the plaintiff's allegations." Id. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). "If the existence of jurisdiction turns on disputed factual issues, and those jurisdictional disputes are not intertwined with the merits of the claim, then it falls to the district court to resolve those factual disputes itself." Bowen v. Energizer Holdings, Inc., 118 F.4th 1134, 1143 (9th Cir. 2024) (cleaned up). "Conversely, when jurisdictional issues are intertwined with an element of the merits of the plaintiff's claim, the court must treat the motion like a motion for summary judgment and leave the resolution of material factual disputes to the trier

_____

[2] Unless otherwise indicated, all further "Rule" references are to the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

of fact." Id. (cleaned up).

II.    RULE 12(b)(6).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. See Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984), abrogated on other grounds by Neitze v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989); 2 Moore's Federal Practice § 12.34[4][b] ("Dismissal under Rule 12(b)(6) . . . is also appropriate when a successful affirmative defense or other bar to relief on the claim is conclusively established on the face of the complaint.").

**DISCUSSION**

I.    STANDING.

"Article III [of the United States Constitution] confines the federal judicial power to the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

resolution of 'Cases' and 'Controversies.'  For there to be a case or controversy under Article III, the plaintiff must have a personal stake the case – in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423, 141 S.Ct. 2190, 2203 (2021) (internal quotation marks omitted). Article III requires a plaintiff to show that he or she:  (1) "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 704 (2000); TransUnion LLC, 594 U.S. at 423, 141 S.Ct. at 2203 ("[A] plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992)).  "[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, 528 U.S. at 185, 120 S.Ct. at 706.

Defendant mounts a factual attack, (see Dkt. 14, Motion at 6), based on the injury in fact prong.[3]  (See id. at 6-13).  More specifically, defendant argues that plaintiff fails to plead Article III injury-in-fact "because she does not plead a plausible VPPA claim," (see id. at 8), and because defendant did not actually disclose plaintiff's viewing information to Meta.  (See id. at 12-13). Defendant also contends that plaintiff does not have standing because she "voluntarily disclosed to Meta [and the general public] the exact information she alleges is 'private' video information (her NNA Certification course)."  (See id. at 9); (see also id. at 11-12) (contending plaintiff does not have a privacy interest in information she has publicized to the general public).  According to defendant, via her Facebook Page and LinkedIn Profile, plaintiff "operates and promotes a public notary business[,]" (see Dkt. 14, Motion at 12), and "tout[s] her affiliation with the NNA and specifically her completion of the NNA Certification course, which she alleges is private information."  (Id.); (see Dkt. 14-1, Clarke Decl. at ¶ 38) (representing that plaintiff's LinkedIn Profile "includes a picture of the exact certificate she received from the NNA following the completion of the online NSA Certification program that she obtained from NNA"); (id. at ¶ 40) (stating that on her Facebook Page, plaintiff "identifies herself as a 'Loan Signing Agent[,]" which "is the exact certification from the only program that she purchased from the NNA (the NSA Certification)"); (id. at ¶ 42) (stating that plaintiff's business website "again identifies her[] as a 'certified loan signing agent" which "is the exact certification from the only program that she purchased from the NNA (the NSA Certification)").  However, the Facebook, LinkedIn, and business websites that defendant relies upon show only that plaintiff identified herself as a loan signing agent and that perhaps she obtained a Loan Signing Agent certificate from NNA.  (See

---

[3]  In support of its standing argument, defendant submits (1) the declaration of Robert Clarke, its Chief Financial Officer (Dkt. 14-1, Declaration of Robert Clarke in Support of Motion to Dismiss ("Clarke Decl.")); (2) plaintiff's Facebook Page, (Dkt. 14-1, Exh. 3 at ECF 22); (3) plaintiff's LinkedIn Profile, (Dkt. 14-1, Exh. 1 at ECF 14-17); and plaintiff's business website.  (Dkt. 14-1, Exh. 4 at ECF 24-25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

Dkt. 14-1, Clarke Decl. at ¶¶ 33-42); (id., Exhs. 1-4).  They do not disclose which particular prerecorded videos she purchased from defendant's website.

With respect to defendant's argument that it did not actually disclose plaintiff's information to Meta, which is based on the Clarke declaration, plaintiff points to the factual allegations in the Complaint and the investigation conducted by counsel to show otherwise.  (See Dkt. 27, Plaintiff's Opposition to Motion to Dismiss ("Opp") at 8); (Dkt. 27-1, Elliot Jackson's Declaration in Support of Plaintiff's Opposition ("Jackson Decl.") at ¶¶ 2-5 & Exh. 1).  But these factual disputes cannot be resolved at this stage of the litigation.  As the Ninth Circuit recently reiterated, "when a court is faced with a factual attack on standing pursuant to Rule 12(b)(1), the court must leave the resolution of material factual disputes to the trier of fact when the issue of standing is intertwined with an element of the merits of the plaintiff's claim."  Bowen, 118 F.4th at 144 (internal quotation and alteration marks omitted); (see, e.g., Dkt. 14, Motion at 8) ("Turner fails to plead Article III injury-in-fact because she does not plead a plausible VPPA claim.").

II.    FAILURE TO STATE A CLAIM.

Defendant also contends that plaintiff has failed to state a VPPA claim.[4]  (See Dkt. 14, Motion at 13-22).  To state a claim under the VPPA, "a plaintiff must allege that (1) a defendant is a video tape service provider, (2) the defendant disclosed personally identifiable information [("PII")] concerning any customer to any person, (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by [18 U.S.C. §] 2710(b)(2)."  Mollett v. Netflix, Inc., 795 F.3d 1062, 1066 (9th Cir. 2015) (internal quotation marks omitted).

Defendant first argues that it is not a "video tape service provider" ("VTSP") under the VPPA.  (See Dkt. 14, Motion at 15-16).  The VPPA defines a VTSP, in part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]"  18 U.S.C. § 2710(a)(4).  According to defendant, plaintiff does not allege any facts that "NNA is primarily 'engaged in the business' of selling" covered video materials, and that it is "not sufficient that a company is 'peripherally or passively involved' in delivery of covered video materials."  (See Dkt. 14, Motion at 16) (quoting In re Vizio, Inc., Consumer Priv. Litig., 238 F.Supp.3d 1204, 1221-22) (C.D. Cal. 2017).  However, defendant's suggestion that under the VPPA a defendant must be "primarily" engaged in the business of selling covered video material (see Dkt. 14, Motion at 16), and that "delivering covered video materials [must be] the defining feature" of its business, (see id. at 17), is misplaced as it relies on inapposite cases.  Those cases involved contentions that defendants were VTSPs because they were in the business of "delivering" audio visuals materials, see, e.g.,

---

[4]  Defendant's request that the court take judicial notice of plaintiff's social media profiles and its privacy policy (see Dkt. 14, Motion at 14-15) is denied.  Even if such material may be considered in connection with a Rule 12(b)(1) factual challenge, it may not necessarily be permitted in connection with a Rule 12(b)(6) motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

In re Vizio, Inc., Consumer Privacy Litig., 238 F.Supp.3d 1204, 1221-22 (C.D. Cal. 2017); Rodriguez v. JD Boden Servs. Inc., 2024 WL 559228, *1 (S.D. Cal. 2024) (defendant was a "clothing retailer selling primarily online" and plaintiff "watched a short snippet of video that played automatically when she visited Defendant's website"); Walsh v. California Cinema Invs. LLC, 2024 WL 3593569, *5 (C.D. Cal. 2024) (defendant operated a website through which consumers could purchase movie tickets and plaintiff alleged that defendant "deliver[ed] audio visual materials by displaying movie trailers on the [w]ebsite"); Cantu v. Tapestry, Inc., 697 F.Supp.3d 989, 993 (S.D. Cal. 2023) ("Hosting and creating prerecorded videos for the purpose of marketing its products does not suffice to plausibly allege Defendant is a video tape service provider."), which may involve greater line-drawing issues. For instance, the court in Vizio noted that "a letter carrier who physically places a package that happens to contain a videotape into a consumers mailbox" is obviously "delivering" a videotape to a consumer, "[y]et the letter carrier could not be characterized as 'engaged in the business' of delivering video content because her job responsibilities are in no way tailored to delivering packages that contain videotapes as opposed to any other package." 238 F.Supp.3d at 1221. But here we are not faced with such an issue where plaintiff alleges that NNA "sells various prerecorded video materials on its Website[,]" (see Dkt. 1, Complaint at ¶ 58), is "engaged in the business of selling and delivering prerecorded video materials," (id. at ¶ 76), and details the manner in which plaintiff herself purchased such "prerecorded video material" from the www.nationalnotary.org website. (See id. at ¶ 9). Indeed, defendant concedes that it sells online material.[5] (See Dkt. 14, Motion at 4) ("As part of its larger training and education programming, the NNA offers online education courses for purchase."); (id. at 17); (Dkt. 14-1, Clarke Decl. at ¶ 15).[6]

Defendant also contends that plaintiff fails to adequately allege "disclosure" under the VPPA because (1) defendant did not actually disclose the information; (2) the information disclosed has

---

[5] Defendant contends that its sale of online material comprises only 10% or less of its total sales. (See Dkt. 14, Motion at 17); (Dkt. 14-1, Clarke Decl. at ¶ 15). But even if such evidence were permitted at the motion to dismiss stage, it would not assist defendant as it provides no authority for the proposition that the percentage of sales is a relevant consideration. (See, generally, Dkt. 14 Motion at 16-17). Rather than citing authority involving the sale of audio and video material, defendant, as noted above, relies on cases involving "delivery" of such material.

[6] Defendant further contends, in a single paragraph, that plaintiff does not adequately allege that NNA sells covered "audio-visual materials" because she has not alleged or otherwise suggested that the audio visual materials referenced in the Complaint are "similar to the prerecorded video cassette tapes and other materials that Congress sought to protect under the VPPA." (See Dkt. 14, Motion at 17-18). But defendant does not provide any authority for the proposition that the prerecorded video material plaintiff alleges she purchased from defendant's website would not be protected under the VPPA. (See, generally, id.). Indeed, as one court explained, "the phrase 'similar audiovisual materials' indicates that the definition is medium-neutral[.]" Vizio, 238 F.Supp.3d at 1221.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

been publicized by plaintiff via Facebook, LinkedIn, and her business website; (3) the allegations are insufficient to demonstrate that a disclosure of PII occurred; and (4) an FID is not PII.  (See Dkt. 14, Motion at 18-22).  The first two contentions are easily dispatched as they rely on facts outside the Complaint, and in any event, plaintiff's social media and website disclosures are not, as noted above, as broad as defendant purports.

With respect to defendant's contention that the Complaint does not allege sufficient facts to show that a "disclosure" of PII occurred, (see Dkt. 14, Motion at 19-20), the Complaint adequately alleges that at all relevant times plaintiff "had a Meta account, a Meta profile displaying her name and picture, and an FID associated with such profile[,]" (Dkt. 1, Complaint at ¶ 10), and that defendant "disclosed [her] Private Video Information (including her FID, unique identifiers, and her request or purchase of prerecorded video material from Defendant's website) to third parties[.]" (Id. at ¶ 13).  Plaintiff also alleges that "when a consumer requests or obtains a particular prerecorded video on [NNA's] website, the Meta Pixel technology that defendant intentionally installed on its Website transmits (1) the unencrypted FID for each purchaser; (2) detailed information revealing the titles and subject matter of the prerecorded videos requested or obtained by each of its purchasers; and (3) the URL where such videos are available for purchase, without the consumer's consent[.]" (Dkt. 1, Complaint at ¶ 41).  Under the circumstances, such allegations are sufficient to state a claim.[7]  See, e.g., Archer v. NBCUniversal Media, LLC, 794 F.Supp.3d 716, 722 (C.D. Cal. 2025) ("Plaintiffs properly alleged that Defendants disclosed Plaintiff's personally identifiable information to Meta by transmitting their FIDs, video titles, and video URLs to Meta when a consumer added a video to their shopping cart.").

Finally, defendant's contention that an FID is not PII, (see Dkt. 1, Motion at 20-21) is similarly without merit.  The VPPA defines PII as including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]"  18 U.S.C. § 2710(a)(3).  Under governing Ninth Circuit authority, PII "means only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior."  Eichenberger v. ESPN, Inc., 876 F.3d 979, 985 (9th Cir. 2017) (internal quotation marks omitted).  Indeed, most courts in the Ninth Circuit have found that an FID is PII. See, e.g., Heerde v. Learfield Communications, LLC, 741 F.Supp.3d 849, 857 (C.D. Cal. 2024) ("Most courts have found the Pixel discloses PII at the pleading stage, at least where plaintiffs also allege personal information existed on their Facebook page that could be used to readily identify them."); Chandra v. Prager Univ. Found., 2026 WL 434938, *3 (C.D. Cal. 2026) ("Plaintiffs have met their burden to plead that FIDs coupled with video viewing histories are PII under the VPPA.

---

[7] Defendant also contends that plaintiff does not adequately allege a "knowing" disclosure. (See Dkt. 14, Motion at 22).  However, the Complaint alleges that defendant "knowingly disclosed" plaintiff's private video information because it "intentionally installed and programmed the Meta Pixel code on its Website, knowing that such code would transmit the prerecorded video material requested or obtained by their consumers and the consumers' unique identifiers (including FIDs)." (Dkt. 1, Complaint at ¶ 79).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

This conclusion is consistent with the vast majority of courts in the Ninth Circuit that have addressed this question at the pleading stage and have found that Facebook Pixel's disclosure of FIDs and video viewing histories can constitute a PII disclosure."); Garcia v. Bandai Namco Entertainment America Inc., 2025 WL 2451033, *8 (C.D. Cal. 2025) (declining to follow out-of-circuit decision and noting that "it is a question of fact whether an ordinary person could identify Plaintiff's Facebook ID and video game titles from the Pixel Code").

III.     CONSTITUTIONALITY OF THE VPPA.

Defendant contends that the VPPA is unconstitutional as applied.[8]  (See Dkt. 14, Motion at 22-25).  The court disagrees.  First, defendant argues that the VPPA is unconstitutionally vague "due to vague references to 'any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials,' and 'any renter, purchaser, or subscriber of goods or services from a video tape service provider.'" (Dkt. 14, Motion at 22-23) (citing 18 U.S.C. § 2710(a)-(b)) (emphasis in original).

"A law is unconstitutionally vague if it does not give a person of ordinary intelligence fair notice of what is prohibited or if it is so standardless that it authorizes or encourages seriously discriminatory enforcement."  Tingley v. Ferguson, 47 F.4th 1055, 1089 (9th Cir. 2022) (internal quotation marks omitted).  "The operative question under the fair notice theory is whether a reasonable person would know what is prohibited by the law."  Id.  Here, the VPPA provisions at issue are sufficiently clear to give a person of ordinary intelligence fair notice of what is prohibited.  See also Tucson v. City of Seattle, 91 F.4th 1318, 1329 (9th Cir. 2024) ("[P]erfect clarity is not required even when a law regulates protected speech.  Condemned to the use of words, [courts] can never expect mathematical certainty from our language.") (citation and internal quotation marks omitted).  And defendant does not explain otherwise, contending only that "[p]laintiffs in cases such as this one are advocating for the statute to apply to entities that had no notice it applied to them or the conduct at issue in this case." (Dkt. 14, Motion at 23).  However, the words used in the relevant provisions of the VPPA provide such notice.

Second, defendant contends that the VPPA violates the First Amendment.  (See Dkt. 14, Motion at 23-25).  Defendant concedes that the information at issue is "commercial speech" (see id. at 23), and thus subject to intermediate scrutiny under the test articulated in Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n ("Central Hudson"), 447 U.S. 557, 566, 100 S.Ct. 2343, 2351 (1980).  Under Central Hudson, the court must determine:  (1) "whether the "asserted governmental interest is substantial[;]" (2) "whether the regulation directly advances the governmental interest asserted[;]" and (3) "whether it is not more extensive than is necessary to serve that interest."  447 U.S. at 566, 100 S.Ct. at 2351; Retail Digit. Network, LLC v. Prieto, 861

---

[8] The United States has intervened for the limited purpose of defending the constitutionality of the VPPA.  (See Dkt. 38, United States of America's Notice of Intervention at 2); (Dkt. 38-1, United States of America's Memorandum in Support).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 25-0334 FMO (PDx)** | Date | **March 27, 2026** |
|---|---|---|---|
| Title | **Teresa Turner v. National Notary Association** | | |

F.3d 839, 844 (9th Cir. 2017) (same).

With respect to the first factor, as one court put it, "Congress's interest in enacting the VPPA was to preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials[,] and [t]he Supreme Court has repeatedly recognized the sanctity of personal privacy." Saunders v. Hearst Television, Inc., 711 F.Supp.3d 24, 33 (D. Mass. 2024) (internal quotation marks omitted); see Eichenberger, 876 F.3d at 983 ("The VPPA . . . protects privacy interests . . . by ensuring that consumers retain control over their personal information."); id. (noting Senate Report that explains "that the VPPA protects against intrusion in an age when consumers 'provide to businesses . . . personal information without having any control over where that information goes'") (quoting S. Rep. No. 100-599 at 6-7).

As to the second factor, "restricting [defendant] from disclosing to third parties the precise videos that plaintiff[] viewed alongside plaintiff['s] PII directly and materially advances that interest." Saunders, 711 F.Supp.3d at 33. As for the third factor, "the VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers. The court is satisfied that the fit between Congress's goal of protecting privacy in this realm and its means to do so is at least reasonable." Id. (internal quotation marks omitted); see Bd. of Trs. of State Univ. of New York v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 3035 (1989) ("What our decisions require is a 'fit' between the legislature's ends and the means chosen to accomplish those ends[] – a fit that is not necessarily perfect, but reasonable[.]") (citation and internal quotation marks omitted).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion **(Document No. 14)** is **denied**.

2. Defendant shall file its Answer by no later than **April 10, 2026**.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |