**CLARK HILL LLP**
Myriah Jaworski (SBN 336898)
mjaworski@clarkhill.com
Matthew Mejia (SBN 330028)
mmejia@clarkhill.com
350 Tenth Avenue, Suite 1200
San Diego, CA 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460

Chirag H. Patel (*pro hac vice)*
cpatel@clarkhill.com
130 E. Randolph
Suite 3900
Chicago, IL 60601
Telephone: (312) 985-5900
Facsimile: (312) 985-5999

*Attorneys for Defendant National Notary Association*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TERESA TURNER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

NATIONAL NOTARY ASSOCIATION,

Defendant.

Case No. 2:25-CV-00334-FMO-PD

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO CERTIFY MARCH 27, 2026 ORDER DENYING MOTION TO DISMISS FOR INTERLOCUTORY REVIEW AND TO STAY PROCEEDINGS, OR IN THE ALTERNATIVE, RECONSIDERATION THE MARCH 27, 2026 ORDER**

Date: May 28, 2026
Time: 10:00 a.m.
Judge: Fernando M. Olguin
Ctrm: 6D

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on May 28, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, before Honorable Fernando M. Olguin, in Courtroom 6D (Floor 6) of the above-entitled Court, located at First Street United

States Courthouse, 350 W 1st St, Los Angeles, CA 90012, Defendant National Notary Association ("NNA" or "Defendant"), by and through its attorneys of record, will and hereby moves this Court to certify for interlocutory review, its March 27, 2026 Order Denying NNA's Motion to Dismiss [ECF No. 41] regarding Plaintiff Teresa Turner's ("Turner") claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and to stay proceedings in this matter pending appellate review.

Specifically, NNA seeks certification of the following controlling questions of law: (1) whether a plaintiff can establish Article III standing under the VPPA based on the alleged disclosure of information that involved public facts and which the plaintiff has already made publicly available, and (2) whether a Facebook ID ("FID"), either alone or in combination with other alleged data, constitutes personally identifiable information ("PII") under the VPPA under the Ninth Circuit's "ordinary person" standard.

This motion is based upon the 28 U.S.C. § 1292, the following notice and memorandum of points and authorities, a proposed order, the complete file and records in this action, the argument of counsel, and such other matters as the Court may consider.

Dated: April 24, 2026

CLARK HILL LLP

By: */s/ Chirag H. Patel*
Myriah V. Jaworski
Chirag H. Patel

*Attorneys for Defendant National Notary Association*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3**

The parties conferred on April 16, 2026 to discuss the substance of the contemplated motion and any potential resolution. Following conferral, the parties were unable to reach a resolution. Plaintiff's counsel indicated that no additional time was needed to review Defendant's proposed motion and agreed that Defendant should proceed with filing. Pursuant to L.R. 7-3, Chirag H. Patel's Declaration is attached.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendant certifies that this brief contains 5,480 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 24, 2026

By: *s/ Chirag H. Patel*
Chirag H. Patel

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL AND PROCEDURAL BACKGROUND .......... 4

A. FACTS RELATING TO THE VPPA CLAIM .......... 4

B. PROCEDURAL HISTORY .......... 5

C. THE COURT'S MARCH 27, 2026 ORDER .......... 5

III. STANDARD FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) .......... 5

IV. ARGUMENT .......... 6

A. CERTIFICATION SHOULD BE GRANTED UNDER 28 U.S.C. § 1292(B) .......... 6

1. The Court's Order Presents a Controlling Legal Question .......... 7

2. Substantial Grounds for Difference of Opinion Exist .......... 9

3. Interlocutory Appeal Will Materially Advance the Litigation .......... 12

B. STAY OF PROCEEDINGS PENDING REVIEW IS APPROPRIATE .......... 13

C. ALTERNATIVELY, THE COURT SHOULD RECONSIDER ITS MARCH 27, 2026 ORDER .......... 16

V. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbassi v. INS*,
143 F.3d 513 (9th Cir. 1998) .......... 13

*Ahrenholz v. Board of Trustees of the University of Illinois*,
219 F.3d 674 (7th Cir. 2000) .......... 6

*Archer v. NBCUniversal Media, LLC*,
794 F. Supp. 3d 716 (C.D. Cal. 2025) .......... 11

*Brown v. Wal-Mart Stores, Inc.*,
2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) .......... 15, 16

*Casas v. Victoria's Secret Stores, LLC*,
No. CV 14-6412-GW(VBKX), 2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) .......... 15

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) .......... *passim*

*In re Cement Antitrust Litig.*,
673 F.2d at 1026–27 .......... 7

*Chandra v. Prager Univ. Found.*,
No. 2:25-CV-03984-MCS-SK, 2025 WL 3049870 (C.D. Cal. Oct. 21, 2025) (Scarsi, J.) .......... 3, 11

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......... 6

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) .......... 5, 8, 9

*Edie Golikov v. Walmart Inc.*,
No. 2:24-CV-08211-RGK-MAR, 2026 WL 1008933 (C.D. Cal. Mar. 10, 2026) .......... 14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 1, 2, 10, 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) .......... 9

*Fukuda v. Cnty. of L.A.*,
630 F. Supp. 228 (C.D. Cal. 1986) .......... 6

*Gallion v. Charter Commc'ns Inc.*,
287 F. Supp. 3d 920 (C.D. Cal. 2018) .......... 15

*Garcia v. Bandai Namco Ent. Am. Inc.*,
No. 8:25-CV-00967-DOC-PVC, 2025 WL 2451033 (C.D. Cal. Aug. 7, 2025) .......... 11

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......... 13

*Hunt v. Check Recovery Sys., Inc.*,
2008 WL 2468473 (N.D. Cal. June 17, 2008) .......... 14

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) .......... 7, 8, 12, 13

*Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*,
2016 WL 5905935 (N.D. Cal. Oct. 11, 2016) .......... 7

*James v. Price Stern Sloan, Inc.*,
283 F.3d 1064 (9th Cir. 2002) .......... 5

*Kieliszewski v. Relias, LLC*,
2026 WL 451369 (E.D.N.C. Feb. 17, 2026) .......... 2

*Kieliszewski v. Relias, LLC*,
2026 WL 262766 (E.D.N.C. Jan. 30, 2026) .......... 2

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .......... 13, 14

*Lovett v. Omni Hotels Mgmt. Corp.*,
2016 WL 7732622 (N.D. Cal. Apr. 18, 2016) .......... 7

*Maxim v. Guangzhou Netease Computer Sys. Co., Ltd.*,
No. 2:20-cv-11331-AB, 2021 WL 12301425 (C.D. Cal. Nov. 9, 2021) .......... 16

*Mills v. Target Corp.*,
No. EDCV 20-1460 JGB, 2021 WL 12300105 (C.D. Cal. Oct. 15, 2021) (Bernal, J.) ........ 16

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........ 1, 10

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Ready Pac Foods, Inc.*,
2011 WL 1059284 (C.D. Cal. Mar. 18, 2011) ........ 9

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 2

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 13, 14

*Ocean S. v. Los Angeles Cnty.*,
No. LA CV23-06921 JAK (EX), 2024 WL 5298601 (C.D. Cal. Dec. 4, 2024) ........ 12

*Osheske v. Silver Cinemas Acquisition Co.*,
700 F. Supp. 3d 921 (C.D. Cal. 2023), *aff'd*, 132 F.4th 1110 (9th Cir. 2025) ........ 11

*Pena v. Taylor Farms Pac., Inc.*,
2015 WL 5103157 (E.D. Cal. Aug. 15, 2015) ........ 14, 15

*Popa v. Microsoft Corp.*,
153 F.4th 784, (9th Cir. 2025) ........ *passim*

*Porter v. Mabus*,
2014 WL 669778 (E.D. Cal. Feb. 20, 2014) ........ 7

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ........ 8, 11, 12

*Rieve v. Coventry Health Care, Inc.*,
870 F. Supp. 2d. 856 (C.D. Cal. 2012) ........ 9

*Shurance v. Planning Control Int'l, Inc.*,
839 F.2d 1347 (9th Cir. 1988) ........ 12

*Simmons v. Akanno*,
2011 WL 1566583 (E.D. Cal. Apr. 22, 2011) ........ 7, 8

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 885, 223 L. Ed. 2d 274 (2025) .......... 3, 8, 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 9, 10, 16

*Steering Comm. v. United States*,
6 F.3d 572 (9th Cir. 1993) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 2, 10, 16

*U.S. Rubber Co. v. Wright*,
359 F.2d 784 (9th Cir. 1966) .......... 5

*U.S. v. Martin*,
226 F.3d 1042 (9th Cir. 2000) .......... 16

*United States v. Woodbury*,
263 F.2d 784 (9th Cir. 1959) .......... 6

*Williams v. Alameda County*,
657 F. Supp. 3d 1250 (N.D. Cal. 2023) .......... 7

*Zaborowski v. MHN Gov't Servs., Inc.*,
2013 WL 1832638 (N.D. Cal. May 1, 2013) .......... 13, 14

**Constitution**

Article III of the U.S. Constitution .......... *passim*

**Statutes**

28 U.S.C. § 1292(b) .......... *passim*

**Court Rules**

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) .......... 4

L.R. 7-16 .......... 16

L.R. 7-18 .......... 16

L.R. 7-18(b) .......... 16

**Other Authorities**

Restatement (Second) of Torts § 652D .......... 1

S. Rep. 100–599 .......... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Ninth Circuit recently held in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025), that the Supreme Court's decision in "[*TransUnion*] contemplates a standing inquiry particularized to a plaintiff's circumstances ***and benchmarked to a specific tort***." (emphasis added). Applying that standard to a claim that a website technology intercepting a website user's interaction with a website violated a Pennsylvania wiretapping statute, *Popa* "benchmarked" the alleged injury against two common law privacy torts—public disclosure of private facts and intrusion upon seclusion. *Id.* at 791–92. Applying the elements of each those of those common law torts, the Ninth Circuit concluded that the plaintiff failed to demonstrate a "concrete" Article III injury because she did not show how the alleged interception "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791 ("[A] claim for public disclosure of *private* facts requires that [...] concerns 'the *private life* of another'" and is highly offensive (emphasis added)).[1]

Most notably, the *Popa* court distanced itself from its earlier decision analyzing Article III standing for VPPA claims (and the primary decision relied upon by this Court in its March 27 order)—*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981–84 (9th Cir. 2017). *Popa* went as far as to that it would "analyze [standing under the VPPA] differently today, especially after the Supreme Court's decision in *TransUnion*." *Id.* at 794–95.

Thus, *Popa* introduces controlling question of law upon which is substantial grounds for difference of opinion: whether a standing inquiry under the VPPA must be "particularized to a plaintiff's circumstances ***and benchmarked to a specific tort***." *Id.* at 791. Indeed, in *Kieliszewski v. Relias, LLC*, a district court "benchmarked" a

---

[1] The Ninth Circuit decided *Popa* after this the NNA's motion to dismiss was fully briefed but before this Court's decision on the motion.

substantially identical a VPPA claim to the same privacy torts as *Popa* (public disclosure of private facts and intrusion upon seclusion) and held that the plaintiffs failed to demonstrate a concrete injury. No. 5:25-CV-00043-M-RN, 2026 WL 262766, at *7 (E.D.N.C. Jan. 30, 2026), report and recommendation adopted, No. 5:25-CV-00043-M-RN, 2026 WL 451369 (E.D.N.C. Feb. 17, 2026).

The facts of this case demonstrate exactly why *Popa* should govern the Article III analysis of a VPPA claim. The VPPA was a congressional response to a newspaper publishing *private facts* about a then public figure: the titles of videos that Supreme Court nominee Judge Robert H. Bork had rented from a local video store. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); S. REP. 599, 5, 1988 U.S.C.C.A.N. 4342-1, 4342–5. The congressional record was clear that the VPPA's intent was to protect *private* facts – the "movies [we watch] in our living rooms" that might reveal our "our loves, likes, and dislikes." S. REP. 599, 7 (S. Simon).

But, the alleged disclosure here has nothing to do with private facts. The alleged "video" information relates to professional certification that Turner received from the NNA. Not only does this information relate to Turner's public and professional life as a notary, but she actively published having obtained that certification from the NNA across the internet and voluntarily disclosed the information with the exact party to whom she claims the authorized disclosure occurred. Under *Popa*, this would fall far short from the "highly offensive" privacy harms that were "traditionally recognized as providing a basis for lawsuits in American courts," as either a public disclosure of privacy facts or an intrusion upon seclusion. *Popa*, 153 F.4th at 791–92 (quoting *TransUnion*, 594 U.S. at 425).

Next, a VPPA violation requires the disclosure of personally identifiable information ("PII"), which is "only that information that would "readily permit an *ordinary person* to identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon*, 827 F.3d at 267) (emphasis in original). Turner's VPPA claim is dependent upon the alleged disclosure

of a Facebook ID ("FID") in connection with a URL-string constituting PII. However, the Second Circuit following the Ninth Circuit's "ordinary person" standard in *Eichenberger*, held that a URL with a "sequence of characters, letters, and numbers that, if correctly interpreted, would identify the title [of a video] combined with an FID ("a unique sequence of numbers") is not PII because it does not permit an ***ordinary person*** to identify an individual's video-viewing behavior. *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir.), *cert. denied*, 146 S. Ct. 885, 223 L. Ed. 2d 274 (2025). *Solomon* is persuasive not only because it relies on Ninth Circuit precedent, but also because the U.S. Supreme Court left *Solomon* has the prevailing authority as to whether an FID and a URL can constitute PII under the VPPA. *See* § IV.A.1, *infra*.

The resolution of these controlling, unsettled, and dispositive issues are exactly the type that warrant which interlocutory review under 28 U.S.C. § 1292(b). *See* § IV.A, *infra*.

First, both of these issues involve controlling questions of law. These issues concern the applicable ***legal*** standard that district courts should apply to determine a plaintiff's sufficiency of pleading a concrete Article III injury and a disclosure of PII for a VPPA claim.

Second, there are substantial grounds for difference of opinion on these two issues. The standard for Article III standing has been heavily litigated in federal courts post-*TransUnion* and *Popa* itself cast doubt on the validity of *Eichenberger*. And Courts within this District have observed that "[t]here is a growing divide among courts about whether Facebook IDs coupled with video viewing histories . . . satisfy the ordinary person test." *Chandra v. Prager Univ. Found.*, No. 2:25-CV-03984-MCS-SK, 2025 WL 3049870, at *4 (C.D. Cal. Oct. 21, 2025) (Scarsi, J.) (dismissing VPPA claim for failure to allege disclosure of PII).

Third, an immediate appeal will materially advance the ultimate termination of the litigation. Both are dispositive of Turner's complaint

Accordingly, the NNA respectfully requests that this Court certify an interlocutory appeal, and stay the case during the pendency of that appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTS RELATING TO THE VPPA CLAIM

Turner alleges that the NNA is non-profit organization who is "the largest and oldest organization in the United States serving notaries and training persons to be notaries through certifications, training, seminars, conferences, and printed and online educational materials." [ECF No. 1 ("Compl.") at ¶ 14]. The NNA is the ultimate source for every notarial need, including: notary insurance and bonding products, the provision of notary supplies (stamps, journals, thumb printers, handbooks, etc.), notary public advocacy and networking, and notary training and education (predominantly through in-person seminars and conferences). [ECF No. 14 ("Mot.") at 14–15].

Turner alleges that the NNA's website discloses PII concerning her purported viewing or purchase of video-related content to non-party Meta Platforms, Inc. ("Meta"), in violation of the VPPA. [*See* Compl.]. Specifically, Turner alleges that when a user interacts with the website, such as by visiting certain pages or initiating a transaction, the Meta Pixel transmits certain data to Meta, including an FID, along series of code within a URL purportedly links an identifiable individual to specific video-related activity. [*Id.* at ¶¶ 42–67, 78].

Turner alleges she obtained a Loan Signing Agent certification course from the NNA in August 2024, which she alleged contains a "video" component. [Compl. ¶ 9]. However, Turner has published on her website, on LinkedIn, and on Facebook (the same entity who operates the Meta Pixel) that she obtained and completed the NNA's Loan Signing Agent certification course. [ECF No. 14-1].

### B. PROCEDURAL HISTORY

On January 13, 2025, Turner filed her single count putative class action under the VPPA. [*See* Compl.]. On March 7, 2025, NNA moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [*See* Mot.].

Turner filed an opposition on April 10, 2025, and the NNA filed a reply on April 17, 2025. [ECF Nos. 27, 28]. While the motion to dismiss was under submission, the NNA filed a Notice of Decisions by Other Courts, bringing to the Court's attention recent Second Circuit authority addressing whether an FID constitutes PII under the VPPA. [ECF No. 39]. On March 27, 2026, the Court issued its Order denying the NNA's motion to dismiss in its entirety and directed the NNA to file an answer. [ECF No. 41 ("Order")].

### C. THE COURT'S MARCH 27, 2026 ORDER

On March 27, 2026, the Court issued its Order denying the NNA's Motion to Dismiss. As to Article III standing, this Court rejected the NNA's argument that Turner lacked a cognizable privacy interest in the alleged information, reasoning that Turner's public statements regarding her professional credentials did not disclose the specific prerecorded videos she purchased. [Order at 3–5]. The Court further declined to resolve the NNA's factual challenge to standing, finding that disputes over whether any disclosure occurred were intertwined with the merits and therefore not appropriate for resolution at this stage. [*Id.*]

The Court also held that plausibly alleged that the NNA disclosed PII, including her FID, video titles, and related URLs, to Meta through the use of the Meta Pixel. [*Id.*] Relying on district court authority within the Ninth Circuit, the Court concluded that an FID may constitute PII where it is alleged to link an individual to specific video-viewing behavior. [*Id.* at 7–8].

## III. <u>STANDARD FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)</u>

Section 1292(b) of Title 28 permits certification of an order for interlocutory appeal if the following requirements are met: (1) there must be a controlling question

of law; (2) there must be substantial grounds for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *see also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). "Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

"[T]he legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026 (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) ("Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."). Therefore, "[Section] 1292(b) is to be applied sparingly and only in exceptional cases." *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959). "The party seeking certification has the burden of showing that exceptional circumstances justify a departure from the 'basic policy of postponing appellate review until after the entry of a final judgment.'" *Fukuda v. Cnty. of L.A.*, 630 F. Supp. 228, 229 (C.D. Cal. 1986) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

## IV. ARGUMENT

### A. CERTIFICATION SHOULD BE GRANTED UNDER 28 U.S.C. § 1292(B)

This case presents the type of exceptional circumstances warranting interlocutory review under 28 U.S.C. § 1292(b). The Court's March 27, 2026 Order turns on threshold legal questions concerning Article III standing and the scope of the VPPA—issues that are controlling, unsettled, and dispositive of whether Turner may proceed at all.

Absent immediate review, the parties will be forced to engage in costly discovery and class proceedings despite unresolved legal questions that may foreclose the case entirely. Section 1292(b) exists to avoid that result. Interlocutory review is therefore warranted because each requirement under § 1292(b) is satisfied, as set forth below.

**1. The Court's Order Presents a Controlling Legal Question**

The term "question of law" does not mean the application of settled law to fact. *Ahrenholz v. Board of Trustees of the University of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000). A question is "controlling" for purposes of § 1292(b) where "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. "A question may be controlling even though its resolution does not determine who will prevail on the merits. But it is not controlling simply because its immediate resolution may promote judicial economy." *Williams v. Alameda County*, 657 F. Supp. 3d 1250, 1254 (N.D. Cal. 2023) (citing *In re Cement Antitrust Litig.*, 673 F.2d at 1026–27).

A question of law is one that presents only legal issues, not any factual ones. *See ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131–32 (9th Cir. 2022). Therefore, a mixed question of law and fact that requires applying the legal standard to the facts of the case is not appropriate for certification. *See, e.g.*, *Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*, 2016 WL 5905935, at *2–3 (N.D. Cal. Oct. 11, 2016) (interlocutory appeal denied where movant argued for certification of a mixed question of law and fact) (citing *Steering Comm. v. United States*, 6 F.3d 572, 575–76 (9th Cir. 1993)); *Lovett v. Omni Hotels Mgmt. Corp.*, 2016 WL 7732622, at *2 (N.D. Cal. Apr. 18, 2016) (same). "But where the mixed question is coupled with a 'pure legal question,' such as whether the district court applied the correct legal standard, both questions can be certified—or at least, the Ninth Circuit may in its discretion exercise appellate jurisdiction over both." *Williams*, 657 F. Supp. 3d at 1254 (quoting *Steering Comm.*, 6 F.3d at 575–76)).

"The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence of facts of a particular case and give it general relevance to other cases in the same area of law." *Simmons v. Akanno*, 2011 WL 1566583, at *3 (E.D. Cal. Apr. 22, 2011) (citation omitted). "The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact, or whether the district court properly applied settled law to the facts." *Porter v. Mabus*, 2014 WL 669778, at *2 (E.D. Cal. Feb. 20, 2014) (citation omitted).

The NNA requests certification on two controlling purely legal questions:

1. Whether demonstrating Article III standing for a VPPA claim requires a plaintiff to demonstrate a privacy harm traditionally recognized by American courts following the Ninth Circuit's decision in *Popa*.

2. Whether an FID combined with a URL permit an "ordinary person" to identify an individual's video-viewing behavior, following the Second Circuit's decision in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir.), *cert. denied*, 146 S. Ct. 885, 223 L. Ed. 2d 274 (2025).

Both issues concern the applicable ***legal*** standard that district courts should apply to determine a Turner's sufficiency of pleading Article III standing and a disclosure of PII for a VPPA claim. *See ICTSI Oregon, Inc.*, 22 F.4th at 1131–32; *Simmons*, 2011 WL 1566583, at *3. Unlike cases where certification is denied because the issue turns on factual disputes or the application of settled law, these questions here define the governing legal standard itself.

These questions are also "controlling" within the meaning of § 1292(b) because their resolution will materially affect the outcome of the litigation. *See In re Cement Antitrust Litig.*, 673 F.2d at 1026. Resolution of either issue will determine whether this case proceeds at all. If Turner cannot establish Article III standing as a matter of law based on the alleged disclosure of non-private or publicly available information, the Court lacks subject-matter jurisdiction and the action must be dismissed. Likewise, if an FID does not constitute PII under the VPPA, Turner's sole claim fails as a matter of law.

Accordingly, each of the questions for which the NNA seeks certification satisfies the "controlling question of law" requirement under § 1292(b).

**2. Substantial Grounds for Difference of Opinion Exist**

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. A substantial ground for a difference of opinion exists when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633 (internal citations and quotation marks omitted). "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.*

However, "[i]nterlocutory review 'should not be used merely to provide a review of difficult rulings in hard cases.'" *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d. 856, 880 (C.D. Cal. 2012) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Ready Pac Foods, Inc.*, 2011 WL 1059284, at *4 (C.D. Cal. Mar. 18, 2011)). "[J]ust because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633. "A party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference," and the fact that "settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.*

Here, substantial grounds for difference of opinion exist because the controlling law governing both questions is unsettled and subject to competing

interpretations by courts applying the same statutory framework—not merely because the NNA disagrees with the Court's ruling.

a. Substantial Ground for Difference of Opinion Exists as to the Standard for Article III Standing for a VPPA Claim After *Popa*

To meet the requirements of Article III standing, a plaintiff must show an "injury-in-fact" that "is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, Inc., 528 U.S. 167, 180–81 (2000). A "bare procedural violation" of a statute is insufficient. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (*quoting Spokeo*, 578 U.S. at 341). Rather, "[f]or standing purposes […] an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of […] law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of […] law." *Id. at* 426–27.

The Ninth Circuit's only case discussing Article III standing for VPPA claims (*Eichenberger*) pre-dates the Supreme Court's 2021 *TransUnion* decision. Prior to *Eichenberger*, the Ninth Circuit recognized that "Congress's purpose when enacting the [VPPA] was '[t]o preserve personal privacy[.]" *Mollett*, 795 F.3d at 1065 (quoting S. Rep. 100–599, at 1). In *Eichenberger*, the Ninth Circuit held that VPPA identifies a substantive right to privacy that suffers any time a video service provider discloses otherwise *private information*." *Eichenberger*, 876 F.3d at 983–84. Importantly, *Eichenberger* analogized the VPPA to the harms under common law privacy torts, such as public disclosure of private facts or intrusion upon seclusion. *See id*.

But neither of these cases addressed whether a plaintiff could demonstrate a viable privacy harm under the VPPA, for the alleged disclosure of public facts about the individual. Specifically, facts that relate to the plaintiff's public and professional

life, or facts that the plaintiff themselves publicly disclosure (both of which occurred with Turner). The Ninth Circuit's late-2025 decision in *Popa* answers that question.

While courts recognize that the VPPA protects a substantive privacy interest, (emphasizing that the VPPA protects consumers' control over the disclosure of their viewing information and targets unauthorized disclosure), there is no controlling Ninth Circuit authority addressing whether that interest extends to information that a plaintiff has already voluntarily made public. Existing precedent focuses on the disclosure of "private" information and analogizes VPPA harms to the tort of public disclosure of private facts. *See Eichenberger*, 876 F.3d at 983–84. But courts have not squarely addressed whether that analogy holds where the alleged information lacks any meaningful privacy component. *See, e.g.*, *Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921, 927 (C.D. Cal. 2023) (explaining that the VPPA "intended to address *private video viewing habits*—not public acts[.]") (emphasis added), *aff'd*, 132 F.4th 1110 (9th Cir. 2025). That unresolved question presents a novel issue on which reasonable jurists could disagree.

b. Substantial Ground for Difference of Opinion Exists as to Whether an FID combined with a URL is PII after *Solomon*

Courts are also divided as to whether an FID constitutes PII under the VPPA. The Second Circuit has held that it does not, reasoning that an FID, "a unique sequence of numbers," does not permit an ordinary person to identify an individual's video-viewing behavior. *Solomon*, 136 F.4th at 47–48, 51–55. In contrast, district courts within the Ninth Circuit have allowed such claims to proceed at the pleading stage based on broader interpretations of identifiability, without consistent reasoning or binding appellate guidance. *Chandra*, 2025 WL 3049870, at *4 ("There is a growing divide among courts about whether Facebook IDs coupled with video viewing histories transmitted by Facebook Pixel satisfy the ordinary person test."); *see also Garcia v. Bandai Namco Ent. Am. Inc.*, No. 8:25-CV-00967-DOC-PVC,

2025 WL 2451033, at *8 (C.D. Cal. Aug. 7, 2025); *Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 722–23 (C.D. Cal. 2025).

Thus, courts applying the same statutory standard have reached materially different conclusions regarding the scope of PII. This divergence, particularly between a federal court of appeals and district courts, demonstrates that the governing law is unsettled and subject to reasonable dispute. *See Reese*, 643 F.3d at 688. At minimum, these issues present novel and difficult questions of first impression in this Circuit, further supporting certification.

**3. Interlocutory Appeal Will Materially Advance the Litigation**

"The Ninth Circuit has not expressly defined material advancement of the ultimate termination of the litigation." *Ocean S. v. Los Angeles Cnty.*, No. LA CV23-06921 JAK (EX), 2024 WL 5298601, at *7 (C.D. Cal. Dec. 4, 2024). However, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. The prong is "satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings. *ICTSI Oregon, Inc.*, 22 F.4th at 1131 (quoting *In re Cement*, 673 F.2d at 1027).

An immediate appeal will materially advance the ultimate termination of this litigation because resolution of the certified questions will either dispose of the case entirely or significantly narrow the issues for further proceedings. For example, if the Ninth Circuit determines that Turner cannot establish Article III standing based on the alleged disclosure of non-private or publicly available information, the case must be dismissed for lack of subject matter jurisdiction. Similarly, if the Ninth Circuit holds that an FID does not constitute PII under the VPPA, Turner's sole claim fails as a matter of law.

Unlike cases in which certification is denied because trial is imminent or the case is otherwise nearing resolution, this action remains at the pleading stage. *See*,

*e.g.*, *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988). In these circumstances, interlocutory review will not delay the litigation, but instead will prevent the parties and the Court from expending substantial resources on discovery, class certification, and trial where the viability of the claims depends on unresolved legal questions.

Section 1292(b) exists to avoid precisely this type of litigation where a threshold legal issue may be dispositive. *See In re Cement Antitrust Litig.*, 673 F.2d at 1027. Because resolution of these questions now "may appreciably shorten the time, effort, or expense of conducting" this case, interlocutory review is warranted. *ICTSI Oregon, Inc.*, 22 F.4th at 1131.

**B. STAY OF PROCEEDINGS PENDING REVIEW IS APPROPRIATE**

If the Court certifies its March 27, 2026 Order for interlocutory review, it should also stay proceedings pending resolution of the appeal. To evaluate whether a stay should be issued, four factors are considered: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 770–71 (1987)).

A "sliding scale" can be applied in district courts within this circuit when weighing these factors, "so that a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez*, 640 F.3d at 964. In particular, a moving party who cannot show a strong likelihood of success "must at minimum show that its appeal presents 'a substantial case on the merits,'" or raises "serious legal issues." *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013) (quoting *Leiva-Perez*, 640 F.3d at 965; *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)). A party meeting this lower threshold "must then demonstrate that the balance of

hardships under the second and third factors tilts sharply in its favor." *Id.* "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). Success on the merits and "whether the applicant will be irreparably injured absent a stay" are the "most critical" factors. *Id.* at 434. All four criteria are met here.

**1. The NNA Presents a Substantial Case on the Merits**

As set forth above, the NNA's appeal presents serious and unsettled legal questions concerning (1) whether the alleged disclosure of non-private or publicly available information can constitute a concrete injury under Article III, and (2) whether a FID qualifies as PII under the VPPA. *See* Section IV.A.

The Ninth Circuit has found that the Court need not determine at this stage whether NNA is likely to succeed on the merits, as that question is reserved for the appellate court, and "[s]uch pre-adjudication adjudication would defeat the purpose of a stay." *See Leiva-Perez*, 640 F.3d at 967.

Instead, it is sufficient that NNA has raised substantial legal questions on appeal. *See Edie Golikov v. Walmart Inc.*, No. 2:24-CV-08211-RGK-MAR, 2026 WL 1008933, at *2 (C.D. Cal. Mar. 10, 2026). These are pure legal issues on which courts have reached conflicting conclusions, including disagreement between the Second Circuit and district courts within this Circuit. At minimum, these issues present a "substantial case on the merits" and raises serious legal questions sufficient to justify a stay. *See Zaborowski*, 2013 WL 1832638, at *2.

**2. Absent A Stay, the NNA and the Court Will Suffer Irreparable Harm**

If granted, this motion to stay would prevent the parties and this Court from wasting resources on an issue that is outcome-determinative to the case-at hand and can be resolved by the Ninth Circuit.

First, pretrial litigation costs "are irreparable." *Pena v. Taylor Farms Pac., Inc.*, 2015 WL 5103157, at *5 (E.D. Cal. Aug. 15, 2015). Incurring the time and

expense of litigation now would be inefficient where the Ninth Circuit may resolve the issue on appeal, potentially obviating the need for further pretrial proceedings. *See Hunt v. Check Recovery Sys., Inc.*, 2008 WL 2468473, at *3 (N.D. Cal. June 17, 2008) (reasoning that "if this matter were to proceed[] to trial and judgment, and then the Ninth Circuit reversed either of the prior Orders, then Defendant will have lost substantial time and money."). Furthermore, "a stay will also prevent all parties from litigating discovery disputes that later prove irrelevant or unnecessary." *Pena*, 2015 WL 5103157, at *6; *see also Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) ("Forcing Defendant to incur potentially substantial fees and engage in discovery that may ultimately be unnecessary constitutes at least some harm to Defendant.").

Second, a stay pending the NNA's appeal to the Ninth Circuit would prevent expending judicial resources on a case where a question of law can be resolved in this stage of litigation. *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 933 (C.D. Cal. 2018) (reasoning that a factor in favor of granting a stay is saving judicial resources). "[R]esolution of the issue [for certification] may alter the direction of the current proceedings, [...] a stay would promote efficiency and economy of time for the Court and the litigants." *Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKX), 2015 WL 13446989, at *5 (C.D. Cal. Apr. 9, 2015).

**3. A Motion to Stay Would Not Materially Injure Turner**

A temporary stay will not materially injure Turner. This case seeks primarily monetary relief and prospective remedies, and any delay associated with appellate review does not impair Turner's ability to obtain relief if warranted. Courts consistently hold that such delay, without more, does not constitute substantial injury as the issuance of a stay will not prevent Turner from seeking relief if the appeal fails. *See Pena*, 2015 WL 5103157, at *6 (finding that delayed monetary relief can be recovered at a later time in the litigation process if necessary); *see also Brown*, 2012 WL 5818300, at *4 (finding that a delay in recovering penalties would not constitute

substantial injury to the plaintiff).

4. **The Public Interest Favors a Stay**

Issuance of a stay could avoid unnecessary litigation expense and time on a case that can be substantially resolved by the Ninth Circuit. This is certainly within the public's interest. Interlocutory review could create binding precedent providing much-needed clarity on the scope of Article III standing and the definition of PII under the VPPA in the context of modern website technologies—issues that are increasingly litigated and currently unsettled. *Mills v. Target Corp.*, No. EDCV 20-1460 JGB (KKX), 2021 WL 12300105, at *7 (C.D. Cal. Oct. 15, 2021) (Bernal, J.) ("A stay furthers these significant interests by ensuring just one court answers the question at issue and preventing confusion in the law."). Resolving these threshold legal questions now will promote uniformity and conserve judicial resources by avoiding potentially unnecessary litigation. *See Brown*, 2012 WL 5818300, at *5.

### C. ALTERNATIVELY, THE COURT SHOULD RECONSIDER ITS MARCH 27, 2026 ORDER[2]

Reconsideration is warranted under Local Rule 7-18(b) based on a material development in controlling law bearing on Article III standing. This intervening authority bears directly on the standing analysis applied in the Court's Order. The Ninth Circuit clarifies in *Popa* that, based on *TransUnion*, determining whether an Article III Injury exists requires an analysis of plaintiff's particular circumstances, benchmarked to a traditionally recognized tort. 153 F.4th at 789–91 ("*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and

[2] While Local Rule 7-18 ordinarily requires motions for reconsideration to be brought within 14 days of the challenged order, both the Ninth Circuit and this Court have explained that the enforcement of the 14-day rule is discretionary rather than mandatory. *See U.S. v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) (noting that L.R. 7-18's predecessor, then known as L.R. 7-16, "impose[d] no time limits on motions made under its auspices"); *Maxim v. Guangzhou Netease Computer Sys. Co., Ltd.*, No. 2:20-cv-11331-AB (JCx), 2021 WL 12301425, at *1 (C.D. Cal. Nov. 9, 2021). Here, good cause exists to waive the 14-day requirement because this motion for reconsideration is coupled with a motion to certify for interlocutory appeal under 28 U.S.C. § 1292(b), which does not have the same abbreviated timeframe and which requires a lengthier and more complex analysis.

benchmarked to a specific tort."). This requirement mandates a comparison between the specific information allegedly disclosed and harms traditionally recognized.

The court further held that routine website interaction data does not constitute the type of private or highly offensive information necessary to support a cognizable privacy injury. *Id.* at 791–92. This controlling authority directly impacts the Court's Article III analysis, as set forth above, and warrants reconsideration to ensure the Order applies the correct legal standard. Absent application of this framework, the standing analysis is incomplete.

Here, the March 27, 2026 Order allowed Turner's claim to proceed based on alleged disclosure of an FID and video titles, without analyzing whether those allegations reflect a concrete injury tied to a traditionally recognized privacy harm. (Order at 3–5). The Order does not assess whether the alleged information is private in nature or comparable to the types of harms historically recognized as actionable. Under *Popa*, that omission is dispositive because routine, non-private information cannot establish a concrete injury. *Popa*, 153 F.4th at 791–92. Reconsideration is therefore necessary to align the Court's standing analysis with controlling Ninth Circuit authority.

## V. <u>CONCLUSION</u>

For the foregoing reasons, NNA requests that the Court certify its March 27, 2026 order for interlocutory review pursuant to 28 U.S.C. § 1292(b), and that it stay proceedings in this matter pending appellate review. Alternatively, the Court should reconsider its March 27, 2026 Order in light of *Popa* and the governing Article III framework.

Dated: April 24, 2026 CLARK HILL LLP

By: */s/ Chirag H. Patel*

Myriah V. Jaworski
Chirag H. Patel

*Attorneys for Defendant National Notary Association*