**CLARK HILL LLP**
Myriah Jaworski (SBN 336898)
mjaworski@clarkhill.com
Matthew R. Mejia (SBN 330028)
mmejia@clarkhill.com
350 Tenth Avenue, Suite 1200
San Diego, CA 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460

Chirag H. Patel (*pro hac vice)*
cpatel@clarkhill.com
130 E. Randolph
Suite 3900
Chicago, IL 60601
Telephone: (312) 985-5900
Facsimile: (312) 985-5999

*Attorneys for Defendant National Notary Association*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERESA TURNER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL NOTARY ASSOCIATION,<br><br>Defendant. | Case No. 2:25-CV-00334-FMO-PD<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 27, 2026 ORDER DENYING MOTION TO DISMISS FOR INTERLOCUTORY REVIEW AND TO STAY PROCEEDINGS**<br><br>Judge: Fernando M. Olguin<br><br>Ctrm: 6D |

Defendant National Notary Association's ("NNA") submits this reply in support of its Motion to Certify the March 27, 2026 Order Denying Motion to Dismiss for Interlocutory Review under 28 U.S.C. § 1292(b) and to Stay Proceedings ("Motion") [Dkt. No. 44].

//

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 4

- A. The NNA Has Demonstrated that § 1292(b) Certification is Appropriate .......... 4
  - 1. Turner Concedes the First & Third Prongs are Satisfied .......... 4
  - 2. The NNA Has Demonstrated that Prong Two (Substantial Grounds for Difference of Opinion) is Met .......... 5
- B. Turner Concedes that a Stay is Appropriate if this Court Enters a Certification Order. .......... 11
- C. Alternatively, this Court Should Reconsider its March 27th Order. .......... 12

III. CONCLUSION .......... 12

## I. INTRODUCTION

Interlocutory review is appropriate under 28 U.S.C. § 1292(b) if there elements are met: (1) there must be a controlling question, (2) there must be substantial grounds for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

Plaintiff Teresa Turner's ("Turner") Opposition [Dkt. No. 45 ("Opp.") at 5–9], never challenges the first or third element. Nor could she. Both are questions of law and are potentially dispositive of this case. By failing to address and challenge these points, Turner concedes that the NNA's motion meets these elements. *Edelmania Prods., LLC v. Serv.*, No. 222CV02484ODWPVCX, 2023 WL 8114860, at *4 (C.D. Cal. Oct. 2023) ("Courts consider a failure to oppose a motion, as to a claim or an issue, as a waiver, abandonment, or concession of that claim or issue.") (collecting cases) (Wright, II, J.).

Turner also never squarely addresses the "substantial grounds for difference of opinion" prong. Rather than analyzing the relevant inquiry under this prong (*i.e.*, whether "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions," *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)), Turner engages in entirely irrelevant inquiries regarding likelihood of success before the Ninth Circuit and whether a direct intra-circuit split exists. [*Id.* at 2–3, 5–9].[1] However, that is not the standard.

Again, the relevant inquiry is whether "fair-minded jurists might reach contradictory conclusions" on "novel legal issues." *Reese*, 643 F.3d at 688. Examples of this include conflicting decisions and questions of first impression. *Couch*, 611 F.3d at 633. Here, Turner's own Opposition—which cites numerous

[1] For consistency, references are to the CM/ECF-generated document and page numbers.

conflicting decision on the same legal issues on a federal statute—demonstrates that this standard is met.

On the first issue for certification (whether Article III standing for a Video Privacy Protection Act ("VPPA") claim requires a plaintiff to show a privacy harm traditionally recognized by American courts following the Ninth Circuit's decision in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025)), this Court is already in conflict with another decision in this District: *Raquel Diaz et al. v. Paramount Skydance Corp. et al.*, No. EDCV 25-02945-KK-DTBX, 2026 WL 1090958, *3-4 (C.D. Cal. Apr. 20, 2026) (Kato, J.). Diaz applied the *Popa* framework to a substantially identical internet-based VPPA claim and concluded the plaintiff lacked Article III standing because the alleged disclosure was not akin to a harm traditionally recognized under the common law torts of disclosure of private information or intrusion upon seclusion. *Id*. The Court in *Kieliszewski v. Relias, LLC*, followed an identical analysis under *TransUnion* for a VPPA claim and also concluded that the plaintiff lacked Article III Standing. No. 5:25-CV-00043-M-RN, 2026 WL 262766, at *7 (E.D.N.C. Jan. 30, 2026), rep. and rec. adopted, No. 5:25-CV-00043-M-RN, 2026 WL 451369 (E.D.N.C. Feb. 17, 2026).

*Diaz* and *Kieliszewski* are in direct conflict with the only other post-*Popa* VPPA decision cited by Turner, *Balestrieri v. SportsEdTV, Inc.*, No. 25-CV-04046-SK, 2025 WL 2776356, at *7 (N.D. Cal. Sept. 2025); [*see also* Opp. at 6]. Turner does not cite to a single Ninth Circuit decision ***after Popa*** that reinforces Article III analysis *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). None exist, as *Popa* expressly casts doubt on the validity of *Eichenberger*'s Article III analysis.

This case puts at center the importance of *Popa*'s direction that courts must analyze the alleged harm based on traditionally recognized privacy torts. Re-publication of facts related to a person's public life have never been remotely harmful. Couching public facts as "video information" does not "transform something that is not remotely harmful into something that is." *TransUnion LLC v.*

*Ramirez*, 594 U.S. 413, 426 (2021) (internal quotation omitted). Again, if an "ordinary person" can infer a person watched a video by looking an FID and long string of code, that same person could surely infer that person who publicizes having a certain certification also took the necessary (video) coursework.

This case may be the first and only to hold that disclosure of alleged video information that relates to public facts is sufficient to demonstrate an Article III injury-in-fact. This alone is sufficient to meet the "substantial grounds for difference of opinion" prong.

The second issue for certification—whether an FID combined with a URL permit an "ordinary person" to identify an individual's video-viewing behavior—meets the second prong's criteria. *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), *cert. denied*,146 S. Ct. 885 (2025), answer that question in the negative. As Turner's opposition recognizes, Courts in this District are now in conflict with *Solomon* (which itself relied on Ninth Circuit law), and the Ninth Circuit has not addressed this exact question.

If this Court certifies either issue for appeal under 28 U.S.C. § 1292(b), it should also stay the case pending resolution of that appeal. [Mot. at 14–16]. The NNA's Motion sets forth how each of the four elements of a stay are met. [*Id.*] Turner, while raising general gripes about discovery, makes no attempt to argue these elements are not met. Thus, Turner concedes a stay is appropriate if this Court enters a certification order.

Finally, this Court in the alternative should reconsider its March 27th order based on *Popa*, which was decided after the parties completed the underling briefing but before this Court's March 27th decision. [Mot. at 16–17]. Here, again, Turner does not contest (and therefore concedes) that the NNA has met the standard for reconsideration.

//

//

# II. ARGUMENT

## A. The NNA Has Demonstrated that § 1292(b) Certification is Appropriate

Certification under § 1292(b) requires (1) a controlling question, (2) substantial grounds for difference of opinion; and (3) material advancement of the ultimate termination of the litigation. *Couch*, 611 F.3d at 633. Turner concedes the first and third prongs. *See* § II(A)(1), *infra*.

There are substantial grounds for difference of opinion both issues upon which the NNA seeks certification because they involve novel legal issues upon which Courts have reached conflicting decisions. *See* § II(A)(2), *infra*.

### 1. Turner Concedes the First & Third Prongs are Satisfied

By failing to directly address the first and third prong, Turner has conceded these points. *Edelmania Prods., LLC,* 2023 WL 8114860, at *4. Again, the questions presented in the motion are pure legal questions that are dispositive of the case. The NNA seeks certification of two questions:

(1) whether demonstrating Article III standing for a VPPA claim requires a plaintiff to demonstrate a privacy harm traditionally recognized by American courts following the Ninth Circuit's decision in *Popa*; and

(2) whether an FID combined with a URL permits an "ordinary person" to identify an individual's video-viewing behavior, following the Second Circuit's decision in *Solomon*.

[Mot. at 16–18]. Resolution of either question in the NNA's favor would terminate the litigation entirely. Turner does not meaningfully dispute that point. Instead, Turner makes a circular argument the Court already correctly resolved those issues. [Opp. at 1–2]. That is obvious; the Court's resolution of that issues is exactly why the NNA is seeking an appeal.

Turner also does not contend that these are controlling legal issues. The questions presented concern the proper interpretation and application of Article III

standing principles and the VPPA in the context of modern digital identifiers and website tracking technologies. Those are precisely the types of controlling legal questions appropriate for interlocutory review under § 1292(b). *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026–27 (9th Cir. 1982).

### 2. The NNA Has Demonstrated that Prong Two (Substantial Grounds for Difference of Opinion) is Met

#### *a. Turner Misstates the Standard Under § 1292(b)*[2]

Turner repeatedly reframes the inquiry as whether the NNA is likely to prevail on appeal or whether the Ninth Circuit is likely to “reverse itself.” [Opp. at 3]. Turner argues certification is unwarranted because he claims Ninth Circuit authority is clear, the NNA identified no conflicting Ninth Circuit authority, and the Ninth Circuit supposedly would not revisit earlier VPPA rulings. [Opp. at 2–3]. However, § 1292(b) imposes no such requirement and Turner fails cite to any authority saying otherwise.

Instead, the relevant inquiry is where an order presents a controlling legal question, substantial grounds for difference of opinion exist, and immediate appeal may materially advance the litigation. 28 U.S.C. § 1292(b); *see In re Cement Antitrust Litig.*, 673 F.2d at 1026. The Ninth Circuit has expressly recognized that interlocutory review may be appropriate where evolving legal doctrine creates uncertainty regarding the governing framework or where courts applying similar legal principles reach materially different conclusions. *See ICTSI Oregon, Inc. v. Int’l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022); *In re Cement Antitrust Litig.*, 673 F.2d at 1026–27.

Nor is certification limited to circumstances involving a direct intra-circuit split. Courts routinely certify issues where controlling legal questions remain

---

[2] Turner sidesteps the NNA’s actual arguments by attacking a position NNA never advanced. [Opp. at 5 at n3]. The NNA does not argue that material advancement alone justifies certification. [*Id.*; *see, generally*, Mot.]. The NNA demonstrated that all three § 1292(b) factors are satisfied, including substantial grounds for difference of opinion. [*See* Mot. at 16–22].

unsettled and fair-minded jurists could reach differing conclusions regarding how existing precedent applies in emerging contexts. *See ICTSI Oregon, Inc.*, 22 F.4th at 1130–31 (explaining that § 1292(b)'s "substantial grounds" requirement is satisfied where "novel legal issues are presented" and "fair-minded jurists might reach contradictory conclusions").

Turner's Opposition therefore improperly elevates the certification standard into a requirement that the NNA prove likely reversal on appeal. [Opp. at 3, 5]. That is incorrect. *See Couch*, 611 F.3d at 633 (finding that substantial grounds may exist where novel questions or conflicting authority create uncertainty regarding governing law).

Turner's reliance on the proposition that *Eichenberger* remains binding likewise misses the NNA's point entirely. [Opp. at 6–9]. The NNA has never argued that *Eichenberger* has been formally overruled. [*See*, *generally*, Mot.]. Rather, the point is that Ninth Circuit provided a new standard for analyzing Article III standing for statutory privacy claims based on *TransUnion*. [Mot. at 10–12, 19–20]. And *Popa*, 876 F.3d at 974, went as far as saying it "might analyze [standing under the VPPA] differently today, especially after the Supreme Court's decision in *TransUnion*." Turner fails to meaningfully engage with that argument.

Intervening appellate authority materially reframing the governing analysis itself establishes substantial grounds for disagreement under § 1292(b), particularly where courts are actively reassessing how earlier privacy decisions apply after *TransUnion*. And very minimum, *Popa* has already led to "fair-minded jurists [to] reach contradictory conclusions," *Reese* 643 F.3d at 688, regarding the standard to measuring Article III standing in VPPA claims. *Compare Diaz*, 2026 WL 1090958, *3-4 (C.D. Cal. Apr. 20, 2026) (finding no Article III standing for internet-based VPPA claim based on *Popa*) *with Balestrieri*, 2025 WL 2776356, at *7 (finding Article III standing for VPPA claim based on *Eichenberger* after *Popa*).

As explained below, both questions upon which the NNA seeks certification meets the "substantial grounds for difference of opinion" prong under the proper Ninth Circuit framework.

*b. Turner Does Not Meaningfully Address The NNA's Argument Regarding the Evolving Standing Framework Following TransUnion and Popa.*

The NNA's Motion explained that substantial grounds for disagreement exist because courts are actively reevaluating privacy-based standing doctrine following *Popa* under historical-harm framework as directed in *TransUnion*. [*See* Mot. at 18–21]. Courts must now conduct a more particularized historical-harm analysis rather than rely on categorical statutory standing theories, even for VPPA claims. [*See* Mot. at 10–11, 18–20]. Turner's Opposition largely sidesteps that argument. [*See*, *generally*, Opp.].

Turner's primary argument is that *Eichenberger* resolved the Article III question, even after *Popa*. [Opp. at 2–3, 6–7]. *However,* Turner never meaningfully attempts to reconcile *Popa* with *Eichenberger*, particularly where the Ninth Circuit states it might decide the Article III issue in *Eichenberger* "differently today" after the Supreme Court's decision in *TransUnion*. *Popa*, 876 F.3d at 794. By arguing that *Popa* does not apply, Turner acknowledges that *Popa*'s analysis would change the result in this case.

Turner's statement that "the Ninth Circuit and its district courts have continued to cite *Eichenberger* with approval" is entirely misleading. [Opp. at 7 (citing *Balestrieri*, 2025 WL 2776356 at *7)]. While *Eichenberger* may remain good law on other points, the Ninth Circuit expressly cast doubt on *Eichenberger*'s Article III analysis in *Popa*. And the Ninth Circuit has not cited *Eichenberger* for an Article III case since *Popa*. The two Ninth Circuit cases cited in Turner's opposition both pre-date *Popa*. [Opp. at 7 (citing *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (per curiam); *Morgan v. Twitter, Inc.*, No. 23-3764, 2025 WL 1248821, at *2 (9th Cir. Apr. 30, 2025)].

And following *Popa*, "fair-minded jurists [are] reach[ing] contradictory conclusions" as how to apply that precedent to statutory privacy claims. *Reese* 643 F.3d at 688. Notably, the only VPPA decision in this district applying this post-*Popa* framework found no Article III standing for a substantially similar VPPA claim. *See Diaz*, 2026 WL 1090958, at *3–5. *Diaz* held that "[t]o demonstrate standing, [p]laintiffs must identify "harms[s] that [they] experienced that [are] remotely similar" to the harms protected by the four "discrete" invasion-of-privacy torts traditionally recognized in American courts. *Id*. at *4 (citing *Popa*, 153 F.4th at 792) (additional citation omitted). The *Diaz* Court observed that the plaintiffs failed to demonstrate that alleged disclosure of video information "caused embarrassment, was invasive, ***or that the videos they watched were at all 'private.'"*** *Id.* (emphasis added). Thus, the Court found that Plaintiff failed to demonstrate a "highly offensive" privacy harm that was akin to the common law torts of intrusion upon seclusion or public disclosure of private facts. *Id*. at *4–5.

*Diaz* is not alone. Courts following *Popa* have increasingly focused on whether the allegedly disclosed information implicates the type of concrete, historically recognized privacy harms required under Article III. *See, e.g.*, *Tanner Herzman v. Smile Brands Inc. D/B/A Bright Now! Dental & Orthodontics*, 2026 WL 1110698, at *3 (S.D. Cal. Apr. 2026); *Jackie Myers, et al. v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, at *2 (E.D. Cal. Apr. 2026); *Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPX, 2025 WL 3786963, at *2, 3–5 (C.D. Cal. Dec. 2025).

The only post-*Popa* Article III VPPA decision cited by Turner is the out of district decision in *Balestrieri*, 2025 WL 2776356. But *Balestrieri* directly conflicts with *Diaz*, demonstrating that reasonable jurists can disagree regarding how *TransUnion*, *Popa*, and *Eichenberger* interact govern the Article III standard for website based VPPA claims.

*Balestrieri* also highlights the novelty of the issue presented in this case. There, the court there emphasized allegations involving disclosure of *private* video-

viewing information and specific video titles. *Balestrieri*, 2025 WL 2776356 at *1, 6–8. Here, on the other hand, Turner's own website publications demonstrate that the alleged video information that was disclosed was not in any sense "private."

The NNA certification course that Turner allegedly "watched" revealed nothing about Turner except that she obtained an NNA certification. But Turner freely shared and publicized that fact about her public life across the internet (including with Meta, the party who allegedly received the disclosure of video information). Turner neither alleges, nor could she ever demonstrate, that this alleged disclosure "caused embarrassment, was invasive, or that the videos [she] watched w[as] at all 'private.'" *Diaz*, 2026 WL 1090958, at *4. Indeed, Turner does not cite to any other cases in which a court considered whether a plaintiff could establish a privacy interest under the VPPA based on the alleged disclosure of information that related only to that individual's public life and public facts.

Whether the Ninth Circuit expressly overruled *Eichenberger*'s Article III analysis in *Popa* is irrelevant. *Popa* expressly cast doubt on the validity of *Eichenberger*, "especially after the Supreme Court's decision in *TransUnion*[.]" *Popa*, 876 F.3d at 794. The fallout from this statement is evident: *Popa* demands a historical-harm framework as directed in *TransUnion* in analyzing Article III standing, and district courts are already reaching conflicting decision as *Popa*'s application to VPPA claims. This clearly demonstrates that substantial grounds for disagreement exist as to the legal standard for Article III standing for VPPA claims.

#### *c. Turner Does Not Meaningfully Dispute That Courts Are Divided Regarding Whether FIDs Constitute VPPA PII*

Turner likewise fails to meaningfully dispute the NNA's showing that courts are actively divided regarding whether FIDs constitute VPPA PII. [Opp. at 2–3, 8–9]. The NNA specifically identified conflicting authority addressing whether an FID, either alone or combined with associated data, satisfies the VPPA's "ordinary person" standard. [Mot. at 11–12, 20–21]. The NNA also cited authority from the

Central District of California expressly recognizing a "growing divide" among courts regarding this precise issue. [*Id.*]

Turner does not dispute that such disagreement exists. Instead, Turner primarily argues that conflicting authority arising outside the Ninth Circuit is insufficient because Ninth Circuit authority supposedly already resolves the issue. [Opp. at 2, 8–9]. Yet, that argument again misstates the standard. Courts routinely look to persuasive circuit authority interpreting the same federal statute to promote uniformity in application. *See United States v. Anderson*, 46 F.4th 1000, 1005 (9th Cir. 2022) ("Our analysis is informed by decisions from other circuit courts that have interpreted the statute, and we will not create a circuit split unnecessarily."); *Am. Vantage Companies, Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) ("[A]lthough we are by no means compelled to follow the decisions of other circuits, 'there is virtue in uniformity of federal law as construed by the federal circuits.'"). Especially where, as here, the Ninth Circuit has not squarely addressed VPPA claims involving modern website tracking technologies and FIDs.

Conflicting persuasive authority interpreting the same statutory framework strongly supports certification under § 1292(b), particularly where the Ninth Circuit has not squarely addressed the precise issue presented here—whether an FID combined with a URL can reasonably identify a person's video-viewing activity to an ordinary person, particularly in light of the Second Circuit's decision in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. May 2025), which relied on and extended the reasoning of *Eichenberger* in holding that an FID and video-related URL data did not constitute VPPA PII because an ordinary person could not readily use the disclosed information to identify a specific individual's video-viewing activity. Notably, Turner makes no attempt to address *Solomon*, despite it being the most recent appellate authority addressing materially similar allegations involving FIDs, URLs, and embedded video-viewing information transmitted online.

Indeed, the existence of materially different judicial outcomes applying the VPPA's "ordinary person" standard confirms that reasonable jurists can and do disagree regarding whether FIDs constitute PII. Courts have reached different conclusions applying materially similar allegations, and district courts within this circuit have expressly acknowledged a "growing divide" on the issue. *See, e.g.*, *Chandra v. Prager Univ. Found.*, No. 2:25-CV-03984-MCS-SK, 2025 WL 3049870, at *4 (C.D. Cal. Oct. 21, 2025).[3] *Solomon* is particularly instructive because the Second Circuit, in looking to Ninth Circuit authority, held that FID information and embedded URL data did not constitute VPPA PII where an ordinary person could not readily interpret the technical information without additional effort or specialized knowledge. *Solomon*, 136 F.4th at 52–54. Those same issues are directly implicated here.

Turner's attempt to dismiss those authorities because they arise outside the Ninth Circuit only reinforces the unsettled nature of the issue, especially since Turner did not cite to any Ninth Circuit authority addressing this precise issue. If anything, the existence of conflicting authority nationwide regarding the issue presented here demonstrates why Ninth Circuit appellate guidance is warranted.

**B. Turner Concedes that a Stay is Appropriate if this Court Enters a Certification Order.**

Turner's Opposition to a stay depends entirely on denial of certification and does not meaningfully dispute that the traditional factors favor a temporary stay pending appeal. [Opp. at 9 n.5]. Because the issues presented are dispositive legal questions that could terminate the litigation entirely, a stay pending interlocutory review would conserve party and judicial resources and avoid potentially

---

[3] Turner mischaracterizes the NNA's reliance on *Chandra*. [Opp. at 8 n.4]. The NNA did not cite the October 2025 order to argue that FIDs are not PII. Rather, the NNA cited *Chandra* as part of the growing and unsettled body of authority addressing whether FIDs constitute PII under the VPPA. [Mot. at 12, 20]. Indeed, the subsequent *Chandra* ruling confirms that courts continue to reach conflicting conclusions on whether FIDs qualify as PII under the VPPA.

unnecessary discovery and class-related proceedings. Again, by failing to meaningfully contest that a stay is appropriate, Turner has conceded this issue.

### C. Alternatively, this Court Should Reconsider its March 27th Order.

Turner makes a cursory assertion that reconsideration is "untimely" that ignores both the basis for the request and the Court's discretion under Local Rule 7-18. [Opp. at 9 n.5]. The NNA seeks reconsideration based on intervening Ninth Circuit authority bearing directly on the Article III framework applied in the Court's Order, namely *Popa*. [Mot. at 25–26]. Courts have recognized that enforcement of Local Rule 7-18's timing provisions is discretionary, particularly where reconsideration is sought alongside certification under § 1292(b) based on evolving controlling authority. *See U.S. v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) (noting that L.R. 7-18's predecessor, then known as L.R. 7-16, "impose[d] no time limits on motions made under its auspices"); *Maxim v. Guangzhou Netease Computer Sys. Co., Ltd.*, No. 2:20-cv-11331-AB (JCx), 2021 WL 12301425, at *1 (C.D. Cal. Nov. 2021). Notably, Turner does not meaningfully respond to the NNA's argument, and therefore concedes, that *Popa* materially reframed the governing standing analysis following *TransUnion* or otherwise dispute that reconsideration is appropriate in light of intervening Ninth Circuit authority.

## III. CONCLUSION

For the foregoing reasons, the NNA respectfully requests that the Court certify its March 27, 2026 Order for interlocutory review pursuant to 28 U.S.C. § 1292(b) and stay proceedings pending appeal. Alternatively, the NNA respectfully requests that this Court reconsider its March 27th Order.

Dated: May 14, 2026

CLARK HILL LLP

By: */s/ Chirag H. Patel*

Myriah V. Jaworski
Chirag H. Patel

*Attorneys for Defendant National Notary Association*

## L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Defendant, certifies that this brief contains 3,680 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Chirag H. Patel*_____
Chirag H. Patel

*Attorneys for Defendant National Notary Association*